[Sac. No. 3032. In Bank.—August 3, 1920.]

GEORGE W. MORDECAI et al., Petitioners, v. BOARD OF SUPERVISORS OF THE COUNTY OF MADERA et al., Respondents.

[1] CONSTITUTIONAL LAW—GENERAL LAWS—UNIFORMITY OF OPERATION.—While the requirement that a general law must have a uniform application does not mean that it must have a universal application, and it is valid if it applies alike to all persons or objects within a class, or there is excepted from its operation a class founded upon some natural, intrinsic, or constitutional distinction, yet if the statute operates only upon a class, or there is excepted from its operation a class, not founded upon a natural, intrinsic, or constitutional distinction, its operation is not uniform, and it is discriminatory legislation of the sort which the constitution purposed to prohibit, and is invalid.

[2] IRRIGATION DISTRICT ACT OF 1919—APPLICABILITY TO COUNTIES—LACK OF UNIFORMITY — ACT UNCONSTITUTIONAL. — The California Irrigation District Act of 1919 (Stats. 1919, p. 671), which repealed the act of June 4, 1915 (Stats. 1915, p. 1173), as amended

in 1917 (Stats. 1917, p. 1068), and which, like the amended act of 1917, provides that nothing in the act shall affect or apply to any irrigation, protection, flood control, conservation, or other improvement district situated wholly or in part within any county which has adopted a charter pursuant to section 7½ of article XI of the constitution prior to June 4, 1915, is violative of article I, section 11, of the constitution, which provides that all laws of a general nature shall have a uniform operation, since no valid reason can be assigned for the distinction made between counties which had adopted a chartered form of government prior to June 4, 1915, and those which had not.

[3] CONSTITUTIONAL LAW — REGULATION OF IRRIGATION DISTRICTS — POWER OF LEGISLATURE.—Section 13 of article XI of the constitution, which provides that the legislature shall have the power to provide for the supervision, regulation, and conduct in such manner as it may determine of the affairs of irrigation districts, does not empower the legislature to pass what laws it sees fit in regard to such districts untrammeled by the general requirement that laws of a general nature shall have a uniform operation.

[4] STATUTORY CONSTRUCTION—VALID AND INVALID PROVISIONS OF ACT.
An act which does not operate uniformly is void only in those provisions as to which a want of uniformity of operation exists, and if those provisions are reasonably separable from the balance of the act, and the purpose of the act and intention of the legislature will be subserved even with those provisions gone, the balance of the act will stand.

[5] IRRIGATION DISTRICT ACT OF 1919—INVALID EXCEPTION NOT SEPARABLE FROM REMAINDER OF ACT.—The Irrigation Act of 1919 is void as to its provisions for the formation of irrigation districts under it, since the exception to its operation which the statute makes destroys its uniformity of operation in the very particular of organizing irrigation districts under it.

APPLICATION for a Writ of Review to annul an order of a board of supervisors forming an irrigation district. Denied.

The facts are stated in the opinion of the court.

Harris & Hayhurst, Haven, Athearn, Hall & Chandler, Edward F. Treadwell and James F. Farraher for Petitioners.

Stanley Murray and A. L. Cowell for Respondents.

Edson Abel, *Amicus Curiae.*

---

4. Effect of partial invalidity of statute, note, **Ann. Cas.** 1916D, 9.

OLNEY, J.—This is a petition for a writ of review annulling an order of the respondent board of supervisors of Madera County. The petitioners are owners of land in that county, and it seems that on October 31, 1919, they filed with the state irrigation board, the administrative board created by the so-called California Irrigation Act of 1919, [Stats. 1919, p. 671], an application for the formation of an irrigation district under that act. Subsequent to the filing of this application, and while it was pending, the owners of other lands in Madera County presented to the board of supervisors of the county a petition for the formation of an irrigation district under the so-called Wright-Bridgeford Act, [Stats. 1897, p. 254], an act which has been in force for years and under which, and under the Wright Act [Stats. 1887, p. 29], which preceded it, most, if not all, of the irrigation districts of this state have heretofore been organized. The district whose formation was so sought included the lands of the petitioners here, and they appeared before the board of supervisors and represented that the state irrigation board had previously acquired jurisdiction of the matter of organizing a district including their lands, and that the proceedings before that board were still pending, and requested that their lands be excluded from the district sought to be organized by the board of supervisors. The supervisors denied this request and made an order approving the formation of a district including the petitioners' lands. It is this order which it is sought to have annulled by the present proceeding.

The ground upon which its annulment is sought is that the state irrigation board, having acquired jurisdiction of the lands of the petitioners for the purpose of including them in an irrigation district, the board of supervisors was without jurisdiction of them for the purpose of including them in another district of the same character. The respondents contend by demurrer to the petition, first, that it is not true that the supervisors were without jurisdiction because of the previous application to the state irrigation board, and, second, that in any case the California Irrigation Act, under which the prior application was made, is unconstitutional and void. It is plain that if the second contention is correct, there is no need for considering the first. Likewise, while it is contended that the act is unconstitutional in a number

of different respects, if it is unconstitutional in one, and that
of such character as to vitiate the provisions of the act ap-
plicable to the organization of irrigation districts, it is plain
there is no need for considering any other respect in which
the act may possibly be invalid.   There is one respect of this
character in which we believe the act is unconstitutional, and
our discussion, therefore, will be limited to it.

The California Irrigation Act was originally passed on
June 4, 1915 (Stats. 1915, p. 1173; Deering's Gen. Laws
1915, Act 1732i).   It was much amplified by amendment in
1917 (Stats. 1917, p. 1068), and in 1919 was repealed and
a new act substantially the same as the amended act of 1917
adopted in its place (Stats. 1919, p. 671; Deering's Consol.
Supp. for 1917–19, Act 1732m).   The prime purpose of the
act is apparently to provide adequate machinery for under-
taking irrigation works of a magnitude too great to permit
of their being undertaken by the ordinary irrigation district.
The act of 1915 provided for the formation of so-called
water districts, and for the transformation of existing irriga-
tion districts into water districts.   The function of the water
districts were to be practically those of irrigation districts.
The amended act of 1917 and the act of 1919 provide for
the formation of irrigation districts as such, and the trans-
formation of districts existing under other laws into districts
existing under the act.   It also provides for the formation
of consolidated districts called conservation districts made
up of irrigation, reclamation, or drainage districts as units.
Wide powers are conferred upon the irrigation board and
upon the districts within their jurisdiction, looking to the
conservation, storage, and drainage of water and to its bene-
ficial use.   The purpose and scope of the act, as the fore-
going statement shows, are general.   Its express terms are
likewise general, with one exception.   The last section of the
act of 1915 (section 17) provided:

"Nothing in this act contained shall affect, or apply to,
any irrigation, protection, flood control, conservation, or other
improvement district wholly or in part within any county
which has adopted a charter pursuant to section 7½ of
article XI of the constitution of California, ratified and ap-
proved as provided therein, or within any city and county;
and said board shall have no power of jurisdiction within

any of said districts or within such counties or city and county.''

Section 19 of the amended act of 1917 and of the new act of 1919 read:

''Nothing in this act contained shall affect, or apply to, any irrigation, protection, flood control, conservation, or other improvement district situated wholly or in part within any county which has adopted a charter pursuant to section seven and one-half of article XI of the constitution of California, ratified and approved as provided therein, *prior to June 4, 1915,* or within any city and county; and said board shall have no power of jurisdiction within any of said districts or within such counties or city and county.''

The contention of the respondents is that the law is general in its nature, and that by reason of the exception so made in its operation it violates the mandatory provisions of our state constitution (section 11 of article I) that ''all laws of a general nature shall have a uniform operation.'' It cannot be and is not questioned that the act is general in nature. The only question, therefore, is as to its uniformity of operation.

The meaning and effect of the provision of our constitution requiring uniformity of operation on the part of general laws have been before our courts on numerous occasions, and the general rule applicable is too plain and too well established to require or to justify a discussion of the authorities. [1] The many times reiterated statement of our decisions is that, while the requirement that a general law must have a uniform application does not mean that it must have a universal operation, and it is valid if it applies alike to all persons or objects within a class—or, what is the same thing, there is excepted from its operation a class—founded upon some ''natural, intrinsic, or constitutional distinction,'' yet if the statute operates only upon a class, or there is excepted from its operation a class, not founded upon a ''natural, intrinsic, or constitutional distinction,'' its operation is not uniform, and it is discriminatory legislation of the sort which the constitution purposed to prohibit and is invalid. (See *Application of Miller,* 162 Cal. 687, 698, [124 Pac. 427], and cases there cited.)

Now, it is somewhat difficult to see how any such distinction in the applicability of an act of the scope and purpose

of that under consideration could rationally be made, as the act of 1915 made, between lands, waters, and districts within counties not having a chartered form of government and those within counties that do, or why, in reason, the state irrigation board should have jurisdiction to function in one class of counties and not in the other. While the constitution itself provides that counties may adopt charters for their government, and a constitutional distinction is thus made between such counties and others, the distinction is one that apparently has no relation to or bearing upon the applicability of an act of the scope and purpose of the California Irrigation Act, and furnishes no reason for making the act applicable in nonchartered counties, but not in chartered counties. (*Rauer* v. *Williams,* 118 Cal. 401, [50 Pac. 691].) It would seem as if it were no more the function of a chartered county than of an unchartered one to provide as a part of the system of county government for the irrigation of private lands within it.

[2] But, however this may be, we think it plain that no valid reason whatever can be assigned for the distinction made by the acts of 1917 and 1919 between counties which had adopted a chartered form of government prior to June 4, 1915, and those which had not. The distinction so made is not merely between chartered and unchartered counties, but between those chartered prior to June 4, 1915, and those that have been chartered since or may be chartered hereafter. There is certainly no such constitutional distinction, and just as certainly there is no such natural or intrinsic distinction. The counties which had adopted charters prior to June 4, 1915, were those of Los Angeles and San Bernardino. The description in the statute of the counties to be excepted from its operation as those chartered prior to June 4, 1915, is in effect but a designation of those two counties, a designation which might just as well have been made by name. The statute then simply sets off these two counties as a special class within whose limits the act does not operate. There can be no natural and intrinsic distinction in such a classification, since very plainly, so far as the objects of this act are concerned, the furtherance of irrigation and the securing of water for that purpose, there is no difference between the two counties excepted and the counties adjoining them, or, for

that matter, between the two counties excepted and the great majority at least of the counties of the state.

The matter may be put in another way. It has been frequently and truly said that the purpose of the constitutional mandate was to prevent special privileges or immunities being granted to a class. (See *Application of Miller, supra.*) In fact, the provision of the constitution for uniformity of operation is closely connected with its further provision (art. I, sec. 21) expressly prohibiting the granting of special privileges or immunities. (*Brooks* v. *Hyde*, 37 Cal. 366, 379.) Now, if the California Irrigation Act be considered as a privilege, what reason is there why the inhabitants and property owners of Los Angeles and San Bernardino should not enjoy that privilege when those within other counties may do so? On the other hand, if the act be considered a burden, why should those within those two counties be immune from it when the rest of the state is subject to it?

We can see no sufficient answer to these questions or to the objection involved in them that the exception from the applicability of the act of counties chartered prior to June 4, 1915, destroys the uniform operation of the act. The first answer made by the petitioners is that the date on which the distinction turns, June 4, 1915, is the date of the passage of the original act, and that counties adopting charters subsequent to that date are in a different class from those which had then adopted charters, because their charters would be adopted with the act in view. There might perhaps be a distinction along this line—whether it would be a sufficient one is another question—if the counties adopting charters after the passage of the act could by their charters take themselves without the operation of the act. But they cannot. The act is applicable to them whether they wish it or no, whether their charters so provide or not. What difference it makes under these circumstances that a county adopts its charter after the passage of the act, we do not see.

A second answer given by the petitioners is that the legislature in granting "immunity" from the act to counties which had adopted charters did so in deference to the right of self-determination and local self-government. But if this be true, why are not counties chartered after the passage of the act given "immunity" from it as well as those chartered before? Certainly one class is as much entitled to the

immunity as the other, and the principle of self-government is as important in the one case as in the other.

A third answer given by the petitioners is based upon the fact that when the act of 1919 repealed the previous act it provided (section 20) that all proceedings initiated under the previous act should not be affected by the repeal, but should proceed under the new act, and that any districts previously organized under the old act should continue under the new. It is argued from this that inextricable confusion would have been caused if the date of the passage of the original act had not been inserted. If any districts had been organized under the original act, its repeal in 1919 might well have caused confusion if provision were not made for their continuance under the new act, but how the date of the passage of the original act could affect the matter we do not see.. It is true that districts might have been organized in counties which had subsequently adopted charters, but it was not necessary, in order to preserve such districts and avoid confusion, to except from the operation of the act counties chartered prior to the passage of the original act. The two things have no connection. The exception from the act of counties chartered prior to the passage of the original act, and the preservation in existence of districts organized in counties chartered subsequent to that time, are two distinct things which have no relation to or bearing upon each other.

[3] A fourth answer by the petitioners is based upon the provisions of section 13 of article XI of the constitution, "that the legislature shall have power to provide for the supervision, regulation and conduct, in such manner as it may determine, of the affairs of irrigation districts, reclamation districts, or drainage districts, organized or existing under any law of this state." It is argued, in effect, that this provision empowers the legislature to pass what laws it sees fit in regard to irrigation districts untrammeled by the general requirement that laws of a general nature shall have a uniform operation. We cannot agree with this. There is nothing to indicate that the power granted the legislature by this provision was not to be exercised by it subject to the general requirements of the constitution governing the manner in which the power of legislation when conferred or possessed shall be exercised. The legislature has the power as conferred by the provision of the constitution just quoted

to legislate concerning the affairs of irrigation districts, but that, power, like the power of the legislature to legislate on other subjects, must be exercised in the manner in which the constitution provides that the power of legislation when it exists must be exercised. Before any grant of power to legislate on a particular subject can be held to be free of a general requirement governing all legislation, the intent of the constitution to that effect must be plain. No such intent appears in the present instance.

The final contention of the petitioners is that even though the exception of counties which adopted charters prior to June 4, 1915, is invalid, it is separable from the balance of the act, and may be disregarded, and the act allowed to stand without the exception so made. An express exception, such as that under consideration, is always easily separable from the balance of the statute of which it is a part. It of necessity stands by itself as an exception. If the contention of the petitioners were sound in this case, it would also be sound in a considerable number of other cases similarly involving statutes of a general nature but which make unauthorized exceptions to the uniformity of their operation. The instances of such statutes are by no means few. But we have been cited to no authority which when examined really supports the petitioners' contention.

If it were possible for the courts without usurping the function of the legislature merely to hold the obnoxious exception invalid and permit the balance of the act to stand unaffected by it, it should, of course, be done, for the rule that the courts should not hold acts of the legislature unconstitutional unless they are plainly so extends to their striking down only such portions of a statute as the constitutional mandates or limitations plainly require should be stricken down. But the difficulty in such a case as the present lies in the fact that, accurately speaking, the constitutional objection is not to the exception, in and of itself, which is made to the statute, but is to the general law with the exception in it. The objection is to the lack of uniformity of operation, to a law which, because of an exception which it itself contains, does not operate uniformly.

It is not a case of a defect affecting only a separable provision of the act, which may be stricken out without affecting the balance, but is the case of a defect which affects the whole

act to the extent to which it destroys its uniformity of operation. In other words, the situation is simply that the legislature has not passed a general law which will operate uniformly, as it was required by the constitution to do. For the courts to eliminate the exception and thus make the statute operate uniformly would be to hold that the legislature had passed a statute which it had not in fact passed and would, in effect, be for the courts themselves to legislate. To put it concretely, for the courts to strike out from the California Irrigation Act the exception of the counties of Los Angeles and San Bernardino, for that is what the exception really is, would be for the courts themselves to extend the operation of the act to those counties, although the legislature has expressly said that they shall not come within its operation.

Upon this point the present case comes directly within the authority of *Spraigue* v. *Thompson,* 118 U. S. 90, [30 L. Ed. 115, 6 Sup. Ct. Rep. 988, see, also, Rose's U. S. Notes]. An action had there been brought to collect pilotage fees due under a section of the Georgia code prescribing such fees except in certain specified instances within which the defendant did not come. The defendant contended that the section was invalid because discriminatory by reason of the exception. It plainly was discriminatory, but the supreme court of Georgia, while so holding, held that the exception might be disregarded, so that the act would stand as if the exception were not there, and gave judgment that the defendant was liable for the fees sought to be recovered. This was reversed on writ of error to the supreme court of the United States, the court saying upon the point (page 94) :

"It was held, however, by the supreme court of Georgia, in the case now before us, that so much of the section as makes these illegal exceptions may be disregarded so that the rest of the section as thus read may stand, upon the principle that a separable part of a statute, which is unconstitutional, may be rejected, and the remainder preserved and enforced. But the insuperable difficulty with the application of that principle of construction to the present instance is, that by rejecting the exceptions intended by the legislature of Georgia the statute is made to enact what confessedly the legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what

anyone can say it would have enacted in view of the illegality
of the exceptions. We are, therefore, constrained to hold
that the provisions of section 1512 of the Code of Georgia
cannot be separated so as to reject the unconstitutional ex-
ceptions merely, and that the whole section must be treated
as annulled and abrogated by section 4237 of the Revised
Statutes.'' (See, also, *Lassen County* v. *Cone*, 72 Cal. 387,
[14 Pac. 100]; *Ex parte Bohen*, 115 Cal. 372, [36 L. R. A.
618, 47 Pac. 55]; *Estate of Mahoney*, 133 Cal. 180, [85
Am. St. Rep. 155, 65 Pac. 389]; *Ex parte Sohncke*, 148 Cal.
262, [113 Am. St. Rep. 236, 7 Ann. Cas. 475, 2 L. R. A.
(N. S.) 813, 82 Pac. 956]; *State* v. *Robinson Co.*, 84 Wash.
246, [146 Pac. 628].)

The language of *Estate of Mahoney*, just mentioned, is
particularly pointed, and, while we are aware that the result
reached in that case was overruled in *Estate of Johnson*,
139 Cal. 532 [96 Am. St. Rep. 161, 73 Pac. 424], it was
overruled upon the theory that the want of a legislative en-
actment covering the excepted class, a want usually inherent
in a general law which contains an exception to its operation,
did not exist in the particular case because the want was
supplied by a superior legislative enactment, the constitution
of the United States, which operated to extend the state
statute over the excepted class regardless of the contrary
intent of the state legislature. In other words, the conclu-
sion reached in *Estate of Mahoney* was overruled in *Estate
of Johnson*, not because of any question as to the correct-
ness of the principle there laid down, but because it was be-
lieved that it was not applicable.

The only authorities which are cited by petitioners as lay-
ing down a different rule are *Hale* v. *McGettigan*, 114 Cal.
112, [45 Pac. 1049], and *Application of Mascola*, 25 Cal.
App. 92, [142 Pac. 903]. In the latter of these a statute
as to the use of fishing-nets applicable by its terms to the
sixth game district and to a part of the fifth was attacked
as invalid because not operating uniformly throughout the
fifth by one who had violated its provisions in the sixth,
where it did operate uniformly. The legislature had the
right to make a distinction by game districts, and the court
held in effect that the want of uniformity as to the fifth
district did not affect the validity of the statute as to the
sixth, since as to the latter the defect did not exist, a ruling

manifestly correct and not in conflict with the views we have here expressed.

In *Hale* v. *McGettigan* the legislature had passed a general statute for the organization and government of counties throughout the state. It contained a general section making the term of office of county officers four years. Tucked away in a subsequent section fixing the compensation of officers of counties of the eighth class was a provision, pretty evidently inserted or left there by inadvertence, which the court construed as a special provision that the term of office of officers of that class of counties should be two years. The court held that this special provision was invalid, but that it did not affect the validity of the balance of the act. The ground on which the decision is placed is that the special provision was wholly analogous to the case of a separate act fixing the term of officers of counties of the eighth class at two years, that such an act would be invalid as special legislation in an instance where that character of legislation is prohibited by section 25 of article IV of the constitution, a provision distinct from that concerning the uniformity of operation of general laws and by no means having the same effect, and that being invalid as special legislation, it would not affect the uniformity of operation of the general law which it purported to modify.

The rule on which the decision so proceeds, that a separate act, which purports to affect the uniformity of operation of a general law, but is invalid for some reason, such as being special legislation, does not affect the general law or its uniform operation, is not open to question. Whether that rule was properly applicable to the case then before the court where the provision as to a particular class of counties different from the provision as to counties in general was not made by a separate act, but as a part of the general law itself, we need not stop to inquire. The rule is plainly not applicable here. If, for example, the California Irrigation Act by its own terms applied to the whole state without exception, and then by a separate but invalid act certain counties were excepted from its operation, the Irrigation Act would still exist as a legislative enactment applicable by its terms exactly as passed by the legislature to the excepted counties as well as to the balance of the state, and its uniformity of operation would not be affected. But where the

Irrigation Act by its own terms omits, as it does, certain counties from its operation, without justification for the distinction so made, then there is no legislative enactment as to those counties, the legislature has not spoken as to them except to say that the act shall not apply to them, the courts cannot speak for the legislature and supply such an enactment, and the statute must fail because of a want of uniformity of operation necessarily inherent in it.

[4] There remains to be said but one thing more. It does not necessarily follow that because an act does not operate uniformly in some respect the whole act is void. It is void primarily, so to speak, only in those provisions as to which a want of uniformity of operation exists, and if those provisions are reasonably separable from the balance of the act, and the purpose of the act and the intention of the legislature will be subserved even with those provisions gone, the balance of the act will stand. In other words, so far as the effect upon the act as a whole is concerned of the invalidity of certain of its provisions which because of some exception to them do not operate uniformly, the principles applicable are those applicable to any case of a part of an act being found to be unconstitutional. [5] But in the present case there can be no doubt as to the effect upon the proceedings initiated by the petitioners for the formation of an irrigation district under the Irrigation Act. One respect in which the act does not operate uniformly because of the exception contained in it is that of organizing irrigation districts. It follows that in this respect at least the act, being a general law, is invalid, with the result that the proceedings taken under it by the petitioners are void, and constitute no legal objection to the inclusion of their lands in a district organized under proceedings subsequently initiated before the board of supervisors. No ground, therefore, appears for annulling the order of the latter organizing such a district.

Writ denied.

Sloane, J., Angellotti, C. J., Lennon, J., Lawlor, J., and Wilbur, J., concurred.

Shaw, J., did not participate.