[Civ. No. 17101.   First Dist., Div. One.   Mar. 26, 1957.]

CHARLES E. McCAMMON et al., Plaintiffs and Appellants, v. THE CITY OF REDWOOD CITY et al., Respondents; HAMILTON MORTON et al., Defendants and Appellants.

G. H. Eckhardt, Jr., A. J. Harwood and Pillsbury, Madison & Sutro for Appellants.

Currie, Lebsack & Hannig for Respondents.

AGEE, J. pro tem.*—This is an appeal from a judgment denying an injunction against the enforcement of an ordinance of the city of Redwood City which prohibits the operation on certain streets of any truck having a gross weight of over three tons.

■■■ Appellants collectively own, lease and operate the Whipple Road Quarry. Respondents are the city, its councilmen and other city officials. The ordinance was enacted by the city council, to become effective December 15, 1954. It established certain designated streets within the corporate limits as routes over which could be operated trucks exceeding a maximum gross weight of three tons and prohibited such operation over any other streets. Certain exceptions were made as to trucks entering from the outside and having a

*Assigned by Chairman of Judicial Council.

destination point inside the city but these trucks were likewise required to *enter* the city only on an established truck route. (Another exception was made as to trucks on a trip originating inside the city.)

The quarry is located to the west of the city on Edgewood Road, in the unincorporated area of San Mateo County, and has been in operation for many years. Its products are transported by trucks, all of which exceed 3 tons in gross weight whether loaded or empty. Edgewood Road is a county highway and runs generally east and west. It intersects at its eastern terminus with El Camino Real (U.S. Highway No. 101) which runs through the city in a general northerly and southerly direction. From the quarry entrance, running easterly along Edgewood Road, to the city limits is a distance of 1.6 miles and from there to El Camino Real is a distance of 1.1 miles. The elevation of the quarry is 239 feet above sea level and that of the intersection of Edgewood Road and El Camino Real is 17 feet above sea level. Thus the route from the quarry to El Camino Real easterly on Edgewood Road is a distance of 2.7 miles on a downgrade. The only reason for selecting this particular intersection on El Camino Real is that it is the nearest to the quarry and at this point trucks coming from the quarry can either turn north or south on El Camino Real to delivery points up or down the peninsula. A substantial part of the trucking from the quarry had followed this route.

El Camino Real is a state highway and is designated in the ordinance as a truck route. Edgewood Road is not so designated nor is any other connecting street which would provide access to El Camino Real from that portion of Edgewood Road which is immediately outside of the city limits.

The other route from the quarry to El Camino Real proceeds westerly on Edgewood Road to its intersection with Canada Road, a distance of 1.35 miles, from there southerly on Canada Road to its intersection with Woodside Road, a distance of 3.6 miles, and from there easterly to its intersection with El Camino Real, a distance of 4 miles. (Woodside Road is a state highway and also is designated in the ordinance as a truck route.) The intersection of Woodside Road and El Camino Real is 1.35 miles south of the intersection of Edgewood Road and El Camino Real. However, there is nothing in the record to indicate which intersection is nearer to most of the destination points of the quarry trucks. The important factor to appellants seems to be the difference in haul-

ing distances from the quarry to El Camino Real. This is 2.7 miles on Edgewood Road as against 8.95 miles on the other route, a difference of 6.25 miles. In addition, the summit on Edgewood Road between the quarry and Canada Road is 549 feet above sea level and the resulting grade is a cost factor in trucking operations.

The points raised by appellants will be discussed in the order made. The first is whether the enforcement of the ordinance causes irreparable injury to appellants. The trial court found that it does not. This finding is inconsistent with the following findings: " [T]hat at all times prior to enforcement of Ordiance No. 781 a substantial number of trucks carrying rock and earth from said quarry proceeded from the quarry easterly on Edgewood Road and entered the city limits of Redwood City, and that a considerable portion of said trucks so entering Redwood City went through Redwood City to El Camino Real, a state highway; that some of said trucks so entering Redwood City made local deliveries in said city; . . ." ▇ Under these facts it is clear that the closing of the usual route to trucks from the quarry made necessary a longer and more expensive haul to reach El Camino Real. Such curtailment of appellants' business operations is manifestly an irreparable injury justifying the equitable remedy of injunction if all of the other necessary elements are present. (*Greenfield* v. *Board of City Planning Comrs.*, 6 Cal.App.2d 515, 518 [45 P.2d 219].)

▇ The ordinance in question was enacted pursuant to section 713 of the Vehicle Code. This section authorizes incorporated cities to prohibit by ordinance the use of its streets which are designated therein by vehicles exceeding a specified maximum gross weight limit. If such an ordinance attempts to so restrict the use of a state highway, the section requires the city to designate an alternate route which is not so restricted and submit the ordinance and the designated alternate route to the Department of Public Works for its approval. The ordinance under consideration herein was submitted to and approved by the Department of Public Works although the city did not designate any alternate route therein. Inasmuch as the ordinance did not contain any restriction upon the use of any state highway it was not necessary to do so. However, appellants contend, and we think correctly, that there must in fact be such an alternate route or otherwise the ordinance is unreasonable. The extra hauling distance over

such alternate route has already been discussed and this is the crux of this litigation.

It should be emphasized that the ordinance does not prevent trucks from the quarry from delivering to any point in the city or elsewhere. However, appellants contend that, as a practical matter, the ordinance has this effect because the increased distance makes the hauling so expensive that it is not economically feasible.

The justification of the city for the enactment of the ordinance is that none of its streets connecting with Edgewood Road at the point where it enters the city is so constructed as to bear weight in excess of the limitation specified therein. Also, that all of said streets pass through residential areas and the use thereof by heavy trucks constitutes a traffic hazard, particularly as to children.

Appellants argue that the alternate route must be entirely within the city limits. In other words, that there must be an alternate route commencing at the point where Edgewood Road reaches the city limits and extending therefrom to El Camino Real on streets entirely within the city limits. There is no such requirement in section 713 of the Vehicle Code or otherwise.

Appellants also argue that a city does not have the power to enact an ordinance which has an extraterritorial effect, i.e., on through traffic on county roads outside of the city. However, this is not true where, as here, the State of California has expressly granted to incorporated cities the power to enact such an ordinance as to the use of the streets within its limits. Appellants rely heavily upon *Ferran* v. *City of Palo Alto*, 50 Cal.App.2d 374 [122 P.2d 965], but that case acknowledges the exception to which we have just referred, in the following language (p. 379): "One of the limitations upon such ordinances is that they can have no extraterritorial force *unless by express permission of the sovereign power; . . .*" (Emphasis added.) This express provision is contained in section 713 of the Vehicle Code.

Appellants next argue that subdivision (d) of section 714 of the Vehicle Code establishes the policy of the State of California that all vehicles on county roads should have access to the state highways by the most direct route. This subdivision reads as follows: "No ordinance adopted pursuant to this section shall prohibit any commercial vehicle from using any county highway by direct route to or from a State highway for the purpose of delivering or loading for transportation goods,

wares or merchandise.'' ▮ Section 714 expressly applies only to counties, whereas section 713 expressly applies only to incorporated cities, including San Francisco as a city and county. If the Legislature desired to restrict the cities in the same manner as it has the counties, it would be a simple matter to amend section 713 accordingly. Until this is done it would seem clear that the policy of this state as to restrictions on the use of streets within incorporated cities is as stated in said section 713. The Legislature has been alert to needed changes in this field. ▮ For example, it enacted section 714.1 of the Vehicle Code in 1955. The section is lengthy but may be epitomized by its title, ''When Counties May Close Highways to Commercial Vehicles.'' It is a recognition of the necessity of allowing certain restrictions on the use of county highways located in unincorporated residential areas. ▮ The rapid growth of these areas in this State is a matter of common knowledge and the enactment of section 714.1 is evidence of the alertness of our Legislature to revise or enact legislation to meet new or changing conditions. Certainly, the Legislature has had the opportunity to also change or revise section 713, which was codified in 1935 and has its origin in the California Vehicle Act of 1923. Its failure to do so is significant.

▮ Appellants contend that the ordinance in question is violative of section 21, article I, of the Constitution of California, and Amendment XIV, section 1, of the United States Constitution, in that it discriminates against their trucks and in favor of other trucks. In *Whyte* v. *City of Sacramento*, 65 Cal.App. 534 [224 P. 1008], the ordinance in question restricted the trucking business by vehicles having a carrying capacity of one ton or over to certain designated streets. The decision points out that such an ordinance represents the exercise of the police power but that such power must be reasonably applied and cannot be invoked so as ''to discriminate in favor of or against particular classes or persons as to whom no reasonable basis of discrimination can be said to exist.'' (P. 545.) The court concluded that there is no unlawful discrimination in such an ordinance. ''The ordinance here does no more than what the statute expressly declares that municipal corporations may do with respect to the regulation of motor-trucks of more than a ton-carrying capacity used in such municipalities for the purpose of transporting as a business freight, merchandise or other articles from point to point therein. We do not think that anyone

would undertake to maintain that the statute vesting the city with this power violates any provisions of our own constitution or any mandate of the federal constitution." (P. 552.) "It is true that the plaintiffs and all others whose motor-truck freight business comes within the terms of the ordinance will, by reason thereof, be subjected to more or less inconvenience and perhaps some extra expense. But, in the enforcement of nearly all regulatory provisions of police enactments, there are added burdens or inconveniences. To these, when not so unreasonable as to be unnecessarily burdensome, all citizens must yield for the general or common good. The incidental and necessary burdens and inconveniences of the regulations do not of themselves render the regulation unreasonable. Nor will the extra expense which obedience to the terms of the ordinance may entail upon those whose business falls within the purview thereof itself stamp the ordinance as unreasonable." (P. 551.)

In the instant case, as we have pointed out, appellants' trucks are not prevented from delivering to any point inside or outside of Redwood City. It is simply that the hauling distance to any point in the general area which is east, south or north of the quarry is thereby increased and results in increased expense. The reasonableness of the ordinance is based upon two factors, light construction of the streets so restricted and the traffic hazard through the residential district involved. In keeping with the principles stated in the Whyte case, *supra,* we hold that the ordinance is a valid exercise of the police power and the statutory authority conferred by section 713 of the Vehicle Code.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied April 25, 1957, and appellants' petition for a hearing by the Supreme Court was denied May 22, 1957. Shenk, J., and Carter, J., were of the opinion that the petition should be granted.