[Civ. No. 18220. First Dist., Div. One. Aug. 10, 1959.]

GEORGE H. NEARY, JR., et al., Respondents, v. TOWN OF LOS ALTOS HILLS et al., Appellants.

Robin D. Faisant, City Attorney, Gardner Bullis and Leighton M. Bledsoe for Appellants.

Marlais & Hover for Respondents.

BRAY, P. J.—Defendants appeal from a judgment restraining them from enforcing an ordinance prohibiting the operation of trucks in excess of 12 tons gross weight on the streets of Los Altos Hills.*

QUESTIONS PRESENTED

1. Is ordinance Number 17 void as unreasonable in entirely prohibiting use of the town's streets to vehicles over 12 tons weight?
2. Were the findings supported?
3. Alleged error in rejection of evidence.

---

*The defendants are Town of Los Altos Hills, a municipal corporation, the city council thereof and its members and certain officials of the town.

## FACTS

Since 1927 plaintiffs have owned a rock quarry located in the unincorporated area of Santa Clara County. It has been in continuous operation since March, 1935. From 1951 to August 31, 1956, it was operated by Sondgroth Bros. under a lease. The rest of the time it was and now is operated by plaintiffs. Nine persons are employed. Its equipment is valued in excess of $250,000. The quarry is not operated on weekends, but from Monday through Friday from 8 a.m. to 4:30 p.m. A water truck is used to wet down the roads and quarry property, which is bounded north, east, and west by the city limits of Los Altos Hills. To the south it is bounded by mountains, the first ridge of which has an elevation of about 1,000 feet, the grade of elevation being approximately 40 per cent. No trucks are operated by plaintiffs. The quarry products are transported in trucks owned or operated by plaintiffs' customers without any control by plaintiffs of the route they travel to and from the quarry.

The only roads to the quarry are through certain town streets which have been used since 1935 for the transportation of materials from the quarry. The nearest public road to the quarry property, other than the said town streets, is approximately 3½ miles distant south of the quarry to which there are no connecting roads, public or private, from the quarry. There are no rail facilities at or near the quarry. To get to and from the quarry, trucks must travel on town streets for approximately one mile. The area of the town through which these streets pass is hilly and sparsely populated. Other streets feed into these. On the route usually traveled by the trucks there are 13 homes within the town limits.

The town was incorporated in January, 1956. On June 20, the city council enacted ordinance Number 17, "An Ordinance . . . Regulating Traffic Upon the Public Streets and Providing Penalties for the Violation Thereof." Section 145 provides:

"SECTION 9-145. In accordance with the Code of the State of California and in addition to the provisions thereof, all truck traffic in the Town of Los Altos Hills over the public streets and highways thereof shall be subject to the following regulations: . . .

"(c) No truck shall be operated on any street or public way in the Town of Los Altos Hills, which vehicle with load and including any tractor has a maximum gross weight of over 12 tons (24,000 lbs.);

"(d) There shall be excepted from the provisions of this subdivision of Ordinance Number 17 any vehicle subject to the provisions of section 50¼ of the Public Utilities Act; also any vehicle owned by a public utility while necessarily in use in construction, installation, or repair of any public utility; also any commercial vehicle coming from an unrestricted street having ingress or egress by direct route to and from a restricted street when necessary for the purpose of making pickups or deliveries of goods, wares and merchandise from any building or structure located on any restricted street, or for the purpose of delivering materials to be used in the actual and bona fide repair, alteration, remodeling or construction of any building or structure upon such restricted street and for which a building permit has been previously obtained."

Most of the trucks carrying rock from the quarry weigh much more than the 12-ton maximum limit.

November 30, 1956, the town posted signs on its streets stating that trucks over that gross weight limit were prohibited. Thereafter drivers of three trucks carrying crushed rock from the quarry were arrested or cited for violating the tonnage limit, whereupon plaintiffs brought this suit to test the validity of the ordinance.

1. *Has the Legislature Occupied the Field?*

Ordinance Number 17 was enacted pursuant to section 713, Vehicle Code, as it stood prior to the 1957 amendment. The section provided:

"When Cities May Reduce Weight Limits. (a) Any incorporated city, or city and county may by ordinance prohibit the use of a street to be described in said ordinance by any commercial vehicle or by any vehicle exceeding a maximum gross weight limit to be specified in the ordinance, except with respect to any vehicle which is subject to the provisions of Section 50¼ of the Public Utilities Act . . .

"(c) Except as permitted in this section, no city, or city and county shall have any authority to impose limitations upon the weight of vehicles and loads less than those set forth in this code."

There is a provision in the section to the effect that if the street affected by such ordinance is a state highway the town must designate an alternate route or routes which may be used by trucks without limit as to weight. As none of the streets in question is a state highway that provision of the section is not applicable.

The question as to the validity of ordinance Number 17 is whether section 713, Vehicle Code, authorizes the municipality to set such limitations on the use of its streets as will effectively compel plaintiffs' customers to use smaller trucks, inasmuch as (1) no alternate route has been provided, and (2) there is no way by which, at the present time, rock can be removed from the quarry without using the town's streets. Another way of putting the question is, does section 713, Vehicle Code, authorize such a limitation?

While it is true that the state has occupied the legislative field in the regulation of weight, size, and capacity of trucks (see Veh. Code, §§ 704-711), and consequently any municipal ordinance in conflict therewith ordinarily would be invalid, the Legislature by section 713, Vehicle Code, has seen fit to permit the municipalities to invade the field and make limitations which may be greater than those imposed in the Vehicle Code. However, the Legislature has no power to grant authority to a municipality to enact an ordinance that is unreasonable. In *Whyte* v. *City of Sacramento* (1924), 65 Cal.App. 534, 546 [224 P. 1008], the court said "the question of the reasonableness of an ordinance passed by a municipal corporation, whether, in enacting the ordinance, the governing board of the city proceed under authority conferred by . . . the constitution or that conferred directly by its charter, is open to inquiry by the courts." The same is true if the authority conferred be by legislative act. So the inquiry in our case must be directed not to whether the state has occupied the field (because the state in Veh. Code, § 713, has expressly yielded the field to the municipality) (see *McCammon* v. *City of Redwood City*, 149 Cal.App.2d 421, 426 [308 P.2d 831], and *Whyte* v. *City of Sacramento, supra,* 65 Cal.App. 534, 552, to the effect that the Legislature may properly delegate such power to a municipality), but to whether the ordinance is so unreasonable as to make it void.

Whether there has been a reasonable exercise of the police power is a court question. (*State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners, Inc.,* 40 Cal.2d 436, 440 [254 P.2d 29].) The ordinance here is unreasonable. In these days of the universal use of trucks for transportation of materials of all kinds, no city may close all its streets to trucks of capacities that are in daily use in commerce. In *McCammon* v. *City of Redwood City, supra,* 149 Cal.App.2d 421, 424, where this court upheld an ordinance which limited trucks over a certain weight to the use of certain streets, we stated

that section 713, Vehicle Code, authorizes incorporated cities to prohibit by ordinance the use of streets which are designated therein by vehicles exceeding a specified maximum gross weight limit, but that such ordinance must in fact designate an alternate route within the city for such vehicles, or otherwise the ordinance would be unreasonable. Particularly is this true in a situation like in the instant case, where the topography of the area contiguous to the city is such that no route is open to the plaintiffs' property other than one through the town.

Defendants argue that the town has, in effect, provided the plaintiffs with an alternate route in that plaintiffs can still remove material from their quarry but that in place of the large trucks they are required merely to use smaller trucks, and that though such alternative increases operating expenses, it increases them in no manner different from that by which the quarry owners had their operating expenses increased in the McCammon case by being required to travel the longer, alternate route provided.

While it is true that plaintiffs are not entirely prohibited from removing material by virtue of the ordinance, nonetheless one of the fallacies of the above reasoning is that if it is adopted, what remains to prevent the town from reducing the limit to six tons, or to three tons, or to pickup trucks? In the McCammon case we said that there could be no limit on the weight without providing an alternate route where such limit would not apply.

This is not an action for abatement of a nuisance if any existed in the use of the town's streets by plaintiffs' customers. The sole authority claimed for the ordinance is section 713. There was evidence to the effect that the streets over which the trucks travel were not paved to withstand heavy traffic; that the roads were being damaged by the heavy trucks (although some of the damage was due to water seepage); that at times the trucks passed over the roads at the rate of one every 50 seconds. These facts do not change the situation. On the question of reasonableness it is significant that the weight limits set by the ordinance are less than the limits placed by the Vehicle Code. It would be unreasonable for a municipality to bar entirely from its streets heavier trucks in common use. It is a municipality's obligation to provide for reasonable use of its streets by vehicles generally, including heavy trucks, although as to the latter they reasonably may be barred from certain streets.

We realize that it is the desire of the town to maintain itself for residence purposes only, without any commercial business within its limits, and that the driving of heavy trucks through a residence area is highly undesirable. On the other hand, no municipality can make itself an island through which ordinary traffic (which includes heavy trucks) may not pass. Particularly is this so, where as here a legitimate business, which has been in existence for years, using its only means of ingress and egress over the very streets now attempted to be barred for reasonable use, is denied the reasonable use of those streets.

■ While we have discussed the situation as if section 713, Vehicle Code, authorized a municipality to prohibit the use of *all* its streets to vehicles exceeding designated gross weights, the section does not do that. It reads that the municipality may prohibit "the use of *a* street to be described in said ordinance." (Emphasis added.) Section 15, Vehicle Code, provides that "The singular number includes the plural . . ." However, that does not apply where a reading of the section in question indicates that the singular was not intended to include the plural. If the Legislature had intended that use of all streets by heavy weight trucks could be prohibited, the section would have read "the use of a street or all streets." Moreover, in the case of a prohibition of all streets, the Legislature would not have required that all streets "be described"; the section would have been so worded that the ordinance would have to refer only to all of the streets of the municipality instead of describing each. Then, again, subdivision (e) of section 713 provides that no ordinance shall prohibit "any commercial vehicles coming from an *unrestricted* street having ingress and egress by direct route to and from such restricted streets when necessary for the purpose of making pickups or deliveries . . ." (Emphasis added.) If the section contemplated that *all* streets could be restricted, this section would become meaningless, or at least there would have been a statement that this subdivision did not apply if all streets were restricted.

2. *Findings.*

■ Defendants attack most of the findings as unsupported. We deem it unnecessary to consider them in detail. Actually, there are only two issues in the case: (1) plaintiffs' standing to sue, that is, a showing of irreparable injury, and (2) the validity of the ordinance as enacted pursuant to the grant of

power set forth in section 713, Vehicle Code. The evidence fully supports the essential findings on both these issues. For example, the evidence shows that defendants have threatened to continue to arrest and prosecute all persons driving from plaintiffs' quarry trucks which exceed 12 tons gross weight; that plaintiffs' customers driving trucks over that weight will have to cease both using the town's streets and purchasing materials from plaintiffs for transportation in such trucks; that if the ordinance were held valid at least three of plaintiffs' six principal customers would cease buying material from plaintiffs; that the ordinance if enforced would prevent trucks of over the proscribed weight from delivering in the town; that defendants though requested have refused to designate any street that can be used by said trucks.

The court found that the trucks hauling from plaintiffs' property over the town's streets were operated in a peaceful and quiet manner, and did not constitute a menace to the public peace, health, welfare or safety of the town or its inhabitants. The evidence showed that there had been no accidents, tickets, or arrest of truck drivers (other than for violation of the ordinance). These facts support the finding. Moreover, the finding is not necessary to the decision.

The court found that plaintiffs have no way of ingress or egress for trucks weighing more than 12 tons gross weight, except over the town's streets. Defendants offered to show that plaintiffs could build their own roads if they were to purchase about three miles of private property between their land and the nearest road other than the town streets, but the court did not permit the evidence. There is no authority for the proposition that an alternate route must be constructed by the quarry owners off their own land.

Defendants object to a finding that enforcement of the ordinance would cause plaintiff's customers to discontinue the purchase of rock from the quarry and force plaintiffs to abandon the use of the quarry, and they point out that the evidence indicates that only *some* of the customers threatened to discontinue business with plaintiffs and also that some of the customers could haul economically with loads under 12 tons. This finding is too broad. However, it is not needed to support the judgment. The finding relates to the showing of irreparable injury. Other findings and the evidence show that plaintiffs would suffer irreparable injury even though by the enforcement of the ordinance some of plaintiffs' business

might not be wiped out. ▮ See *McCammon* v. *City of Red-wood City, supra,* 149 Cal.App.2d at p. 424, to the effect that "curtailment" of a party's business operations by an invalid ordinance "is manifestly an irreparable injury justifying the equitable remedy of injunction if all of the other necessary elements are present."

### 3. *Rejection of Evidence.*

▮ Defendants offered to show that the operation of the trucks constituted a nuisance. This evidence was properly rejected as there was no pleading of nuisance and the question before the court was the legality of the ordinance, not whether or not plaintiffs spawned a nuisance. Defendants wanted to examine plaintiffs concerning the profits they had made, the fact that plaintiffs' property could be developed for homes and subdivisions and that roads could be built thereon. This assumed that plaintiffs would purchase the lands intervening between its lands and the far distant road. These matters were properly ruled inadmissible under the issues that were before the court. The same is true of defendants' question of one of the plaintiffs, "Did you, during the course of the campaign for the referendum on Ordinance 17 state that if the ordinance were put in effect that you could run bobtailed trucks out of there end to end in a continuous stream?" Likewise, the court properly sustained an objection to a question asked of one of the plaintiffs whether in that campaign he had stated that he "could punch out a road through the Watson property that you had recently acquired?" The nearest public road to the Watson property was some three miles away. After the evidence established, as has heretofore been shown that it did, plaintiffs' standing to bring the action, the only question remaining was the power of the town under the provisions of section 713, Vehicle Code, to enact the ordinance. The existence or nonexistence of that power is a question of law which cannot be affected by these extraneous matters which defendants sought to introduce.

The judgment is affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 7, 1959.