[Civ. No. 19243. First Dist., Div. Three. Dec. 26, 1961.]

SKYLINE MATERIALS, INC., Plaintiff and Respondent, v. CITY OF BELMONT et al., Defendants and Appellants.

Sam J. Whiting, Jr., City Attorney, Kirkbride, Wilson, Harzfeld & Wallace and Paul A. McCarthy for Defendants and Appellants.

Dinkelspiel & Dinkelspiel, John W. Dinkelspiel, Robert E. Burness, Jr., and John F. Taylor for Plaintiff and Respondent.

DRAPER, P. J.—Defendants, the City of Belmont and its officials, were permanently enjoined from enforcing an ordinance establishing a maximum gross weight of 8 tons for vehicles using Ralston Avenue west of El Camino Real. They appeal from the decree.

Ralston runs from Bayshore Highway on the east to a county road on the west. The latter road, in turn, runs west to Skyline Boulevard. This combination is one of a limited number of roads in San Mateo County connecting Skyline, which is a north-south highway traversing the foothills of the Coast Range, with the populous area more nearly at the level of San Francisco Bay. No other such connecting road runs through Belmont. The westernmost mile of Ralston lies in unincorporated territory, but for most of its length it is wholly within the city limits of Belmont.

Plaintiff, since 1950, has leased and operated a quarry just off Skyline, southwest of the westerly end of Ralston. In 1956 plaintiff acquired land southeast of Belmont and east of the Bayshore Highway. An asphalt plant has been constructed on this site.

In 1955 Belmont adopted an ordinance limiting to 13 tons the gross weight of any vehicle using Ralston Avenue. A limit of 3 tons was fixed for other restricted streets. No signs were posted pursuant to this ordinance, and it was not enforced. In December, 1956 the ordinance was amended to allow the city administrator to issue permits, upon application and payment of prescribed fees, for hauling of "earthen material" over the restricted streets in vehicles exceeding the weight limits. The ordinance as thus amended was enforced. In November 1957 the ordinance was further amended to reduce the allowed gross weight on Ralston and to modify some of the provisions for permits to haul earth. This amendment followed filing of an initiative petition, but was not the result of a vote of the electorate upon such petition.

The market for rock from plaintiff's quarry lies in the populous area along the bay. Whether picked up at the quarry by customers or delivered by plaintiff, this product is transported in trucks whose weight, with load, is 18 tons or more. It is apparent that any increase in hauling costs adversely affects the market for plaintiff's product, and this is the essence of plaintiff's quarrel with the Belmont ordinance.

From plaintiff's quarry to El Camino Real is 5.6 miles via

Ralston Avenue. North of Ralston is Crystal Springs Road, a state highway which is another east-west road connecting Skyline and Bayshore, on which no weight restriction save that of the Vehicle Code applies. The distance from quarry to El Camino and Ralston, by this route, is 10.9 miles, 5.3 miles longer than the route over Ralston. Before there was any ordinance restricting truck weight on Ralston, plaintiff and its customers nonetheless made all deliveries to and north of Nineteenth Avenue in San Mateo via Crystal Springs Road, and it is conceded that if there were no ordinance such deliveries would be made by the same route. Thus it is only deliveries south of this point which are adversely affected by the ordinance. For such deliveries to and south of Belmont along the bay, the restriction has increased the trucking haul by 5.3 miles along El Camino (the distance now stipulated to by the parties, although the trial court found it to be 4.89 miles), by 5 miles if deliveries are over Bayshore, and by lesser distances for points between Ralston and Nineteenth.

 The findings and memorandum opinion of the trial court make clear that a principal basis of its decision was the view that an alternate route wholly within the City of Belmont must be provided. Although respondent's brief does not directly espouse this view, the same argument is made, by indirection, in the contention that the ordinance itself must provide for an alternate route. Obviously, the ordinance can have no extraterritorial effect, and it follows that if this argument is accepted, an alternate route wholly within the city must be provided.

But such is not the true rule. One opinion (*Neary* v. *Town of Los Altos Hills,* 172 Cal.App.2d 721 [343 P.2d 155]) does contain the statement that an ordinance restricting weight limits "must in fact designate an alternate route within the city." But this language is unnecessary to the decision. In *Neary,* a newly incorporated city bounded upon three sides a quarry which had been in operation for some 50 years. On the fourth side, the quarry was adjoined by a mountain over which no road ran and the grade of which was 40 per cent. By this route, the nearest road was some three miles from the quarry, and the intermediate property was not owned by the quarry owner. The city adopted an ordinance barring all of its streets' to all vehicles having a gross weight in excess of 12 tons. The ordinance was not within the legislative grant to cities of power to restrict vehicle weight upon

"*a* street to be described in the ordinance" (Veh. Code, § 713, now § 35701) because it applied to all streets in the city (*Neary* v. *Town of Los Altos Hills, supra,* p. 728). Further, the ordinance clearly was confiscatory in wholly isolating the long-established quarry from all access to any business, in or out of the city.

It is apparent that the *Neary* statement was inadvertent. The sole authority cited for it (*McCammon* v. *City of Redwood City,* 149 Cal.App.2d 421 [308 P.2d 831]) holds precisely to the contrary. In *McCammon,* the court pointed out that designation of an alternate route is required by section 713 (now Veh. Code, § 35701 et seq.) only when a state highway is the subject of the ordinance limitation, and said (p. 424) "Inasmuch as the ordinance did not contain any restriction upon the use of any state highway it was not necessary to do so." After holding that "there must in fact be such an alternate route or otherwise the ordinance is unreasonable" (p. 424), the court in *McCammon* states "Appellants argue that the alternate route must be entirely within the city limits. . . . There is no such requirement in section 713 of the Vehicle Code or otherwise." The "alternate route" in *McCammon* in fact was largely outside the city limits.

While we are in complete agreement with the result reached in *Neary,* we are convinced that the statement relied upon in this case by court and counsel was not necessary to the decision, was inadvertent, and is not to be applied outside the factual context in which it was used in *Neary.* We hold that the "alternate route" required by *McCammon* need not be provided by the city whose ordinance is in question, and need not be wholly within the city.

Here, as in *McCammon,* the ordinance does not cut off access to plaintiff's quarry. There is, contrary to the trial court's view, an alternate route. The true question here, as in all cases of exercise of the police power, is whether the injury sought to be prevented by the ordinance reasonably justifies the burden it places upon plaintiff. In other words, is the ordinance, under all the circumstances, arbitrary, unreasonable or confiscatory as to plaintiff?

The trial court found, as to the need for the ordinance, that "the type of road construction on . . . Ralston . . . will permit" movement of vehicles in excess of 8 tons "without unreasonable damage," and that use of Ralston by heavy vehicles "will not constitute an unreasonable traffic hazard."

In reviewing these findings, we must bear in mind that the Legislature in ceding to cities the right to enforce weight restrictions, and the city council in adopting this ordinance, acted in a legislative and not a judicial capacity. It is eminently clear that the ordinance is an exercise of the police power. The decision of the city's legislative body "as to matters of opinion and policy will not be set aside or disregarded by the courts unless the regulations have no reasonable relation to the public welfare or unless the physical facts show that there has been an unreasonable, oppressive, or unwarranted interference with property rights in the exercise of the police power. [Citations.] The wisdom of the prohibitions and restrictions is a matter for legislative determination, and even though a court may not agree with that determination, it will not substitute its judgment for that of the zoning auhorities if there is any reasonable justification for their action." (*Lockard* v. *City of Los Angeles,* 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990]; *Johnston* v. *City of Claremont,* 49 Cal.2d 826 [323 P.2d 71]; 3 Witkin, Cal. Procedure, 2255.) Although these decisions dealt with zoning ordinances, the same principles apply to other ordinances exercising the police power (*Lynch Meats of Oakland, Inc.* v. *City of Oakland,* 196 Cal.App.2d 104 [16 Cal.Rptr. 302]). Thus we are not to apply the usual substantial evidence rule in reviewing the findings of the trial court as to the wisdom of and necessity for the legislation. Rather, the intendments are in favor of validity of the ordinance, and it is presumed that the enactment as a whole is justified under the police power and tends to promote the public health, safety and welfare (*Lockard, supra,* p. 460). The findings and conclusions of the trial court as to the reasonableness of the ordinance are not binding on an appellate court "if the record shows that the question is debatable and that there may be a difference of opinion on the subject." (*Lockard, supra,* p. 462.) As it is otherwise stated, "[i]f reasonable minds might differ as to the reasonableness of the regulation, the law must be upheld" (*Justesen's Food Stores, Inc.* v. *City of Tulare,* 43 Cal.App.2d 616, 621 [111 P.2d 424], and cases cited; see also *Lynch Meats of Oakland, Inc.* v. *City of Oakland, supra,* p. 104).

 These rules apply to the trial court's findings that in the absence of the weight restriction there would be no unreasonable damage to the roadway, and that use of larger

trucks will not create an unreasonable traffic hazard. Obviously, insofar as they distinguish between "reasonable" and "unreasonable" road damage and traffic hazard, these findings are largely conclusions. In any event, under the rule just stated, they conflict with the legislative determinations which are implicit in the ordinance itself. Thus we look to the record to see whether the question is fairly debatable.

There is expert testimony that use of Ralston by trucks of the weight permitted by general state law would cause early breakdown of Ralston at several points, necessitating reconstruction of the pavement. Although plaintiff offered contrary evidence, there clearly is a debatable question as to sufficiency of the present pavement to carry the added weight desired by plaintiff. In light of the rule of comity reserving to the legislative body the determination of such questions when there is some sound ground therefor, the trial court's finding cannot be sustained.

Similarly, there is evidence that many schools front on or are located near Ralston, that many students walk along or across that street on their way to and from school, that vehicular traffic other than trucking is substantial, that heavy trucks create a hazard in this section, and that on at least one occasion a heavy truck ran out of control down the grade of Ralston and was wrecked in a school yard. Plaintiff offered evidence of a "traffic engineer" designed principally to show that the vehicular "capacity" of Ralston is not reached, and that even with unrestricted trucking less than 80 per cent of this "capacity" would be reached even at peak hours. Again, the evidence at most shows that the issue is fairly debatable. It is apparent that the council was concerned with hazards other than mere traffic density, and it is doubtful that the expert testimony offered by plaintiff met the issue squarely. In any event, it is completely clear that the question whether restriction of truck weights would reduce traffic hazards is one upon which reasonable minds may differ. Thus the legislative determination is free from attack by the courts, and the trial court's finding cannot be upheld.

The trial court found that the ordinance had an adverse effect upon plaintiff in requiring use of Crystal Springs Road for deliveries to the part of its market area lying south of Nineteenth Avenue; that this route is 4.89 miles (the stipulation shows it to be in fact 5.3 miles) longer for destination points south of Ralston; that Crystal Springs Road is "less adequate and more hazardous" than Ralston because it is

steep, is narrower, is "more curvy," and has a narrow bridge; and that it is not "a reasonable alternate route." The court concluded that there is no reasonable alternate route for plaintiff. In reviewing these findings, even if we apply the usual rule of appellate review, plaintiff is not aided. There is evidence to support the finding that Crystal Springs Road is narrower, has more curves and is somewhat steeper in some parts than Ralston. The finding that it is therefore not reasonable for use by plaintiff is, however, a conclusion. Neither it nor the express conclusion that Crystal Springs is not an adequate route can be sustained. The conceded fact that before any restrictive ordinance plaintiff voluntarily used Crystal Springs for deliveries to the area north of Nineteenth Avenue completely negates the view that any consideration save distance in fact limits the use of Crystal Springs. Here the distance from the quarry to El Camino and Ralston, and points south thereof, is 5.3 miles greater via Crystal Springs than by way of Ralston.

This added distance, of itself, is not sufficient to stamp the ordinance as arbitrary or unreasonable. Where the restricted route was but 2.7 miles long, and the available alternative 8.95 miles, the restriction was upheld (*McCammon* v. *City of Redwood City, supra,* 149 Cal.App.2d 421). Here the comparative distances are 5.6 miles over Ralston and 10.9 miles over Crystal Springs, or an increased distance of 5.3 miles. The added distance, of itself and in proportion to the total route, is less here than in *McCammon.* We cannot, in this situation, hold the ordinance invalid.

Plaintiff places some reliance upon the fact that this increase in distance makes a longer haul from plaintiff's quarry to its asphalt plant, and that this results in loss of some part of its investment in the asphalt plant. The record is not clear as to the proportion of rock which plaintiff sells only after it is mixed with asphalt. More important, it is clear that the asphalt plant was constructed only after the first weight limit ordinance was adopted, and when plaintiff was clearly upon notice thereof, even though enforcement had not begun. There is evidence that plaintiff was, under that 13-ton ordinance, able to send empty trucks over Ralston and laden trucks over Crystal Springs, but the added cost of sending the empties by the longer route, as required for most trucks by the 8-ton limitation of the later ordinance, is not shown.

It is apparent that some burden of cost or inconvenience is placed upon plaintiff by the ordinance. This, however, is a common result of the exercise of the police power. In the instant case, the burden is not unreasonable, and does not require that the ordinance be held invalid (*Whyte* v. *City of Sacramento*, 65 Cal.App. 534, 551 [224 P. 1008]).

Plaintiff points to the code provision that no ordinance enacted under it ''is effective with respect to any highway which is not under the exclusive jurisdiction of'' the city (Veh. Code, § 713, subd. (d), now § 35702). Since Ralston originates west of the city limits of Belmont, and runs for some distance east before entering the city, it is claimed to be within this prohibition and thus beyond the jurisdiction of a restrictive ordinance. However, once Ralston does enter Belmont, it is wholly within that city. It is not a boundary street separating one city from another or from unincorporated territory and lying partially in each. Such a boundary street doubtless would be within the prohibition. We see no reason to hold that the prohibition extends to a highway which, running wholly through unincorporated territory, enters a city and from the point of such entrance is wholly within the city. A like situation was presented in *McCammon* v. *City of Redwood City, supra,* 149 Cal.App.2d 421. That case upheld the restrictive ordinance under the same code section. The precise point now raised was not specifically considered in that opinion, but the court did hold that the Redwood City ordinance was not vulnerable to attack on the ground that it had ''extraterritorial effect.'' In any event, *McCammon* clearly held that truck traffic originating on a road in unincorporated territory was subject to a city ordinance limiting truck weights on the portion of the road lying within the city. *McCammon* was filed during the legislative session of 1957. Neither the 1959 nor the 1961 Legislature has seen fit to alter the statute to meet this holding, and we find no reason now to modify the rule of *McCammon.*

In one respect, the Belmont ordinance is discriminatory. It allows special permits for haulers of ''earthen materials'' to operate over the restricted streets trucks of weights in excess of the ordinance limits. Such permits have been issued. Although defendants assert that they have been limited to hauls to or from Belmont points, as distinguished from through hauls, the ordinance is not so limited in terms. No reasonable basis of distinction between truckloads of earth and truckloads of rock is suggested. Road damage and traffic

hazards are increased quite as much by a truckload of earth as by a truckload of rock. The provision for exemption of earth hauls thus is unconstitutional (11 Cal.Jur.2d, Constitutional Law, § 272, p. 719).

There remains, however, the question whether this provision of the ordinance is severable from the remainder, so that the ordinance as a whole does not fall because of the invalidity of the one portion. The ordinance does contain the usual "severability clause," providing that if any portion be held invalid, the remainder would nonetheless have been adopted. This clause, of course, is not an inexorable command (*Danskin* v. *San Diego Unified School Dist.*, 28 Cal.2d 536, 555 [171 P.2d 885]), but the general rule is that only the invalid portion of a legislative enactment should be stricken down, and the valid balance enforced (*Mordecai* v. *Board of Supervisors*, 183 Cal. 434, 442 [192 P. 40]). Of course, where this procedure would amount to usurpation of the legislative power, as where the exception may well have been a major inducement to adoption of the legislation, the entire act must fall (*Mordecai* v. *Board of Supervisors, supra,* p. 442-443). In our case, however, the city council adopted the basic ordinance without the exception for earth haulers. The objectionable exception was added solely by amendment adopted long after passage of the basic weight restriction ordinance. When a valid act is amended by an unconstitutional provision, the usual rule is that only the amendment is invalid (*Danskin* v. *San Diego Unified School Dist., supra,* p. 555, and cases there cited). This rule seems clearly applicable here. The council, by adopting the ordinance without the exception for earth haulers, has aptly demonstrated that the exception did not induce the ordinance. We hold that only the exception is unconstitutional, and the weight limits fixed by the ordinance stand. They are applicable to hauling of earth as well as other materials.

Judgment reversed, with direction to the trial court to enter judgment for defendants.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied January 23, 1962, and respondent's petition for a hearing by the Supreme Court was denied February 21, 1962.