[Civ. No. 42280. First Dist., Div. Two. Sept. 22, 1982.]

SAN LEANDRO ROCK COMPANY, Plaintiff and Respondent, v. CITY OF SAN LEANDRO et al., Defendants and Appellants.

COUNSEL

Steven R. Meyers, City Attorney, for Defendants and Appellants.

Edwin A. Heafey, Jr., Peter W. Davis and Crosby, Heafey, Roach & May for Plaintiff and Respondent.

OPINION

**GRODIN, P. J.**—In 1974 the City Council of the City of San Leandro (City), responding to citizen complaints, enacted an ordinance which has the effect of banning trucks over four and one-half tons from using certain streets within the city, including lower Lake Chabot Road. San Leandro Rock Company (Rock Company), which operates a quarry in Alameda County just outside the city limits of San Leandro, brought suit challenging the ordinance and seeking to enjoin its enforcement on the ground, inter alia, that the use of lower Lake Chabot Road by heavy trucks hauling rock from its quarry was essential to the operation of its business, because there existed no safe or economically reasonable alternate route. While the use of *upper* Lake Chabot Road, which lies entirely within the unincorporated area of the county, was physically

available for heavy truck traffic, the Rock Company contended that the winding and narrow character of that road, and its use for recreational purposes, made it infeasible as a means of access to its quarry.

The trial court made findings in accordance with the Rock Company's contentions, and concluded that the ordinance "arbitrarily and unreasonably ignores the dangers to the plaintiffs and the general public" from using upper Lake Chabot Road; that enforcement of the ordinance would "arbitrarily and unreasonably prevent truck access to the quarry" and "confiscatorily render [respondent's] property valueless"; that "potential public injuries sought to be prevented [by the ordinance] do not reasonably justify the onerous burdens placed upon plaintiffs"; and that for each of these reasons the ordinance represented an "unconstitutional exercise of the police power." Accordingly, it entered judgment permanently enjoining the ordinance as it affects lower Lake Chabot Road. The City appeals.

## Trial Court's Findings

The parties' contentions on appeal focus primarily upon the sufficiency of the evidence to support the trial court's findings in light of applicable precedents. Accordingly, we set forth the relevant findings here.

"3. San Leandro Rock owns and operates a rock quarry in the County of Alameda within 300 feet of the City of San Leandro. The quarry has been in continuous operation at that site since 1910.

"4. The regular hauling route from the quarry has always been down a portion of Lake Chabot Road (hereafter 'lower Lake Chabot Road') and Estudillo Avenue and onto what is now the MacArthur Freeway. Estudillo Avenue and lower Lake Chabot Road lie within the City of San Leandro. On one occasion, for a particular contract, upper Lake Chabot Road was used to gain access to Castro Valley and not via the Fairmont route.

"5. In the early 1950's, approximately 15 residences were built in an area along lower Lake Chabot Road at its western end. Quarry trucks continued thereafter to use lower Lake Chabot Road as a regular truck route without interference for approximately twenty years.

"6. On February 25, 1974, the CITY, responding to complaints, enacted Ordinance No. 74-13, prohibiting trucks in excess of four and one-half tons from using the historic truck route. All trucks used to haul materials from the SAN LEANDRO ROCK quarry exceed four and one-half tons. The City of San Leandro engineering staff recommended to the city council that there was no reasonable alternate truck route to and from the SAN LEANDRO ROCK quarry.

"7. The effect of Ordinance No. 74-13 would be to divert all quarry truck traffic onto upper Lake Chabot Road and Fairmont Drive.

"8. Upper Lake Chabot Road lies to the south of the SAN LEANDRO ROCK quarry. This scenic two-lane county highway runs through a regional park directly past Lake Chabot, a major East Bay recreational area. The road is used by pedestrians, bicyclists, fishermen, hikers and children. The recreational users of Lake Chabot habitually park along the side of the road. The road is narrow, without adequate shoulders and with numerous directional changes and several steep curves. On one side of upper Lake Chabot Road there is a steep drop to the lake; a hill mass rises sharply on the other side in some locations. Drivers along the road have limited visibility because of overhanging eucalyptus trees and blind curves.

"9. In the course of hauling quarry materials on upper Lake Chabot Road, trucks will cross over the center line and into the oncoming traffic lane.

"10. The substructure of the upper Lake Chabot Road is inadequate to allow an increased volume of heavy truck traffic without quick deterioration.

"11. The increased number of trucks on upper Lake Chabot Road will create a speed differential problem between automobile traffic and truck traffic.

"12. In the past, upper Lake Chabot Road has had four times as many non-truck traffic accidents and presently has two and one-half times as many non-truck traffic accidents as similar roads in California. Requiring heavy trucks to use such a high-frequency accident road would increase the potential for accidents.

"13. Upper Lake Chabot Road is not a reasonable alternate truck route to and from the SAN LEANDRO ROCK quarry.

"14. Fairmont Drive, which connects upper Lake Chabot Road with the MacArthur Freeway, has a dangerous down grade and has no escape roads. Fairmont Drive cannot be used as a safe truck route for quarry trucks.

"15. Lower Lake Chabot Road and Estudillo Avenue is the only reasonably available truck route providing ingress and egress to and from the SAN LEANDRO ROCK quarry.

"16. Each of the above findings of fact, considered separately and together, establishes that upper Lake Chabot Road and Fairmont Drive is not a feasible alternate truck route to and from SAN LEANDRO ROCK.

"17. The distance between job sites and the quarry and the time required for each round trip determine whether contractors use SAN LEANDRO ROCK COMPANY rather than its competitors because of the added costs. Requiring quarry trucks to use upper Lake Chabot Road—Fairmont Drive route will increase the time, distance and costs for trucks using the quarry.

"18. If the ordinances are enforced, contractors will go elsewhere and SAN LEANDRO. ROCK COMPANY will be forced to close.

"19. The quarry site will be valueless if quarry operations are closed down."

## APPLICABLE PRECEDENTS

The City challenges the findings of the trial court as to the infeasibility of the alternate route and as to the impact of the ordinance upon Rock Company's business and property on the ground that the trial court failed to accord proper deference to the legislative judgment of the city council. Specifically, the City contends that on the evidence presented these questions were "fairly debatable," and that under applicable precedents the courts must therefore defer to the city council's judgment. Rock Company contends that the "fairly debatable" standard of deference is not applicable to these facts, and that even if it is, the evidence in support of the trial court's findings is so overwhelming as to require affirmance.

The parties' arguments, here and in the trial court, rely upon three cases, all of them decided by this district, in which quarry owners have

challenged weight limitations similar to those at issue here: *McCammon v. City of Redwood City* (1957) 149 Cal.App.2d 421 [308 P.2d 831] (*McCammon*); *Neary v. Town of Los Altos Hills* (1959) 172 Cal.App. 2d 721 [343 P.2d 155] (*Neary*); and *Skyline Materials, Inc. v. City of Belmont* (1961) 198 Cal.App.2d 449 [18 Cal.Rptr. 95] (*Skyline*). A brief summary of those opinions will help frame the issues.

In *McCammon*, an owner of a quarry located to the west of the City of Redwood City, and in the unincorporated area of San Mateo County, challenged a weight limit ordinance which had the effect of precluding their customary use of a city road as access to a highway, and requiring their use of an alternate route on county and state roads. The alternate route was 6.25 miles longer, and included a grade which added a cost factor in trucking operations, thus entailing a longer and more expensive haul. Plaintiff in that case made two arguments which are relevant here: that a city does not have the power to enact an ordinance which has an extraterritorial effect, i.e., on through traffic on county roads outside the city; and that the ordinance was unreasonable because the increased costs made hauling so expensive that it was not economically feasible.

The court in *McCammon* disposed of the plaintiff's first argument by observing that "the State of California has expressly granted to incorporated cities the power to enact such an ordinance" (149 Cal.App.2d at p. 425). (See Veh. Code, § 35701.)[1]

As to plaintiff's second argument, the court stated: "appellants contend, and we think correctly, that there must in fact be . . . an alternate route or otherwise the ordinance is unreasonable." (149 Cal.App.2d at p. 424.) It quoted at length, however, from the opinion in *Whyte v. City of Sacramento* (1924) 65 Cal.App. 534, 551 [224 P. 1008], to the effect that "in the enforcement of nearly all regulatory provisions of police enactments, there are added burdens or inconveniences. To these, when not so unreasonable as to be unnecessarily burdensome, all citizens must yield for the general or common good. The incidental and necessary burdens and inconveniences of the regulations do not of themselves render the regulation unreasonable. Nor will the extra expense which obedience to the terms of the ordinance may entail upon those

[1]Vehicle Code section 35701 provides in pertinent part: "(a) Any city may by ordinance prohibit the use of a street to be described in the ordinance by any commercial vehicle or by any vehicle exceeding a maximum gross weight limit to be specified in the ordinance . . . ."

whose business falls within the purview thereof itself stamp the ordinance as unreasonable." (149 Cal.App.2d at p. 427.) The court then stated, "appellants' trucks are not prevented from delivering to any point inside or outside of Redwood City. It is simply that the hauling distance . . . is thereby increased and results in increased expense. The reasonableness of the ordinance is based upon two factors, light construction of the streets so restricted and the traffic hazard through the residential district involved. In keeping with the principles stated in the Whyte case, *supra*, we hold that the ordinance is a valid exercise of the police power and the statutory authority conferred by section 713 [currently § 35701] of the Vehicle Code." (149 Cal.App.2d at p. 427.)

In *Neary*, a newly incorporated city bounded upon three sides a quarry which had been in operation for some fifty years. On the fourth side, the quarry was adjoined by a mountain over which no road ran and the grade of which was 40 percent. The only roads to the quarry were through city streets. The city adopted an ordinance barring all of its streets to all vehicles having a gross weight in excess of 12 tons, and most of the trucks using the quarry weighed much more than the limit.

The court in *Neary* held the ordinance invalid on the ground that it applied to all streets, whereas the statutory grant of authority to cities of power to restrict vehicle weight upon city streets (Veh. Code, § 713, now § 35701) applied only to "'. . . *a* street to be described in said ordinance.' (Italics added.)" (172 Cal.App.2d at p. 728.) In addition, and as pertinent here, the court found the ordinance to be confiscatory, and for that reason to constitute an unreasonable exercise of the police power, because it failed to provide an alternate route by which material could be removed from the quarry. (*Id.*, at pp. 726-728.) The court rejected the city's argument that plaintiffs could use smaller trucks, observing that if the argument were adopted nothing would prevent the city from reducing the weight limit. (*Id.*, at p. 727.)

In *Skyline*, plaintiff had operated a quarry in or near the City of Belmont for over 10 years, and for delivery to points south of the quarry it and its customers had customarily used a road called Ralston Avenue which runs through that city. The ordinance in dispute established a maximum gross weight of eight tons for vehicles using Ralston Avenue, and as a result plaintiff was required to use for its deliveries to a substantial part of its market area a route which was approximately five miles longer and which, it contended, was "less adequate and more hazardous" than Ralston, because it was steep, narrower, "more curvy,"

and had a narrow bridge. (198 Cal.App.2d at pp. 456-457.) The trial court found, as to the need for the ordinance, that "the type of road construction on ... Ralston ... will permit" movement of vehicles in excess of eight tons "without unreasonable damage," and that use of Ralston by heavy vehicles "will not constitute an unreasonable traffic hazard." (*Id.*, at p. 454.) It also found that the ordinance had an adverse effect upon plaintiff in requiring use of an alternate route which was not "reasonable" for use by plaintiff. On these grounds, among others, it found the ordinance unconstitutional.

This court reversed. As to the trial court's findings regarding the need for the ordinance, we observed that "the Legislature in ceding to cities the right to enforce weight restrictions, and the city council in adopting this ordinance, acted in a legislative and not a judicial capacity." (*Id.*, at p. 455.) Quoting from *Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990], cert. den., 337 U.S. 939 [93 L.Ed. 1744, 69 S.Ct. 1516], we said: "The decision of the city's legislative body 'as to matters of opinion and policy will not be set aside or disregarded by the courts unless the regulations have no reasonable relation to the public welfare or unless the physical facts show that there has been an unreasonable, oppressive, or unwarranted interference with property rights in the exercise of the police power. [Citations.] The wisdom of the prohibitions and restrictions is a matter for legislative determination, and even though a court may not agree with that determination, it will not substitute its judgment for that of the zoning authorities if there is any reasonable justification for their action.'" (198 Cal.App.2d at p. 455.) We then observed, "Although these decisions dealt with zoning ordinances, the same principles apply to other ordinances exercising the police power [citation]. Thus we are not to apply the usual substantial evidence rule in reviewing the findings of the trial court as to the wisdom of and necessity for the legislation. Rather, the intendments are in favor of validity of the ordinance, and it is presumed that the enactment as a whole is justified under the police power and tends to promote the public health, safety and welfare [citation]. The findings and conclusions of the trial court as to the reasonableness of the ordinance are not binding on an appellate court 'if the record shows that the question is debatable and that there may be a difference of opinion on the subject.' [Citation.] As it is otherwise stated, '[i]f reasonable minds might differ as to the reasonableness of the regulation, the law must be upheld' [citations]." (198 Cal.App.2d at p. 455.) We then reviewed the record, which included evidence of possible damage to city streets and safety hazards resulting from the

use of heavy trucks on Ralston Avenue, and concluded as to both that since reasonable minds might differ on the need for the ordinance the trial court's findings could not be upheld. (198 Cal.App.2d at p. 456.)

We then turned to the trial court's findings as to the adverse impact of the ordinance upon the plaintiff, and stated: "In reviewing these findings, even if we apply the usual rule of appellate review, plaintiff is not aided. There is evidence to support the finding that [the alternate route] is narrower, has more curves and is somewhat steeper in some parts than Ralston. The finding that it is therefore not reasonable for use by plaintiff, is, however, a conclusion. Neither it nor the express conclusion that [the alternate route] is not an adequate route can be sustained. The conceded fact that before any restrictive ordinance plaintiff voluntarily used [the alternate route] for deliveries to the area north of [the quarry] completely negates the view that any consideration save distance in fact limits the use of [the alternate route]. ... [¶] [The added distance of 5.3 miles], of itself, is not sufficient to stamp the ordinance as arbitrary or unreasonable. ... We cannot, in this situation, hold the ordinance invalid." (198 Cal.App.2d at p. 457.)

## THE APPROPRIATE STANDARD FOR JUDICIAL REVIEW

■ Rock Company contends that the "fairly debatable" standard set forth in *Lockard* and applied in *Skyline* should not be extended to factual determinations outside the jurisdiction of the municipality. It argues that the City has no special expertise with respect to the impact its ordinance will have on county roads or on Rock Company's business, and that the City has no incentive to be concerned about such matters, since its political constituency is limited to city voters. Consequently, it cannot be relied upon to engage in a fair and objective balancing of the interests involved, and its determination is entitled to no special deference.

It must be conceded that Rock Company's political argument has some practical merit; a city council may well lack the motivation to weigh the interests of nonvoters as heavily as the interests of its own constituency. We confront, however, a statutory scheme in which the Legislature has explicitly authorized cities to adopt weight limitations for vehicles traveling identified city streets. Such regulations inevitably have "extraterritorial" effect upon streets outside the city limits, and in *McCammon* we held that such effect was within the contemplation of the Legislature. (149 Cal.App.2d at p. 425.)

As we observed in *Skyline* (198 Cal.App.2d at p. 458), the Legislature has not seen fit to alter the statute or to meet this holding. While an excellent argument might be made in favor of some coordinated system for supervising the regulation of weight limits by cities, so as to avoid undue extraterritorial impact which may result from a city's regulation, that argument is appropriately addressed to the Legislature, and not to the courts. For courts to undertake this task, and to attempt to balance the interests of a city in regulating its streets against the impact of its regulation outside the city limits, would involve a usurpation of legislative authority not consonant with present law.

We conclude, therefore, that the trial court's findings, insofar as they represent a determination that the use of upper Lake Chabot Road by trucks would be unwise, or that the risks entailed in such use outweigh the benefits to the City of the ordinance in question, can be upheld only to the extent those issues are not fairly debatable, and thus within the proper exercise of legislative judgment.

The impact of the ordinance upon Rock Company's business and property is a related, but partially separate, matter. ■ An otherwise valid ordinance may be invalid as applied to a particular plaintiff if it deprives him of "substantially all use of his land," so as to constitute "excessive regulation in violation of the Fifth Amendment to the United States Constitution and article I, section 19, of the California Constitution." (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 273 [157 Cal.Rptr. 372, 598 P.2d 25], affd. (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138].) And, the *McCammon-Neary-Skyline* trilogy suggests that a weight limitation ordinance which has the effect of putting a rock quarry out of business by blocking use of the only available route for delivery of its product is similarly invalid. ■ To the extent that inquiry into the impact of such an ordinance upon a particular plaintiff is separable from inquiry into the general reasonableness or wisdom of the ordinance, it would seem logical that the "fairly debatable" standard *not* apply, and that the impact be determined by the court on the basis of its independent evaluation of the evidence. This is so not simply because the Legislature lacks expertise or incentive with respect to such a determination, but because what is at stake is an interest which the constitution protects even against the popular will. We proceed now to apply these standards to the record in this case.

## APPLICATION OF STANDARDS TO EVIDENCE

The record contains ample evidence to support the trial court's expressed concerns regarding the safety risks that could result from increased use of upper Lake Chabot Road by trucks. Experts testified that the road is not structurally sound enough to accommodate truck traffic, and that its deteriorating pavement creates a dangerous hazard for heavy trucks. The road is narrow, with no shoulders and steep sides, and there was evidence that trucks would have difficulty negotiating it and would cross the center line. There was also evidence that the 1.7 mile downgrade on Fairmont Drive presented a traffic hazard for heavy trucks. The accident rate on upper Lake Chabot Road is already well above the average for similar roads, and it is certainly a reasonable inference that these various factors, in combination with the recreational use of the roadway during the summer, would cause the rate to increase.

There was, however, evidence to the contrary. The City responded with its own expert testimony, as well as videotape and photographic evidence purporting to demonstrate the trucks could safely negotiate the alternate route. While the weight of that evidence is open to some question,[2] we cannot say that the matter is so clear-cut as to be beyond reasonable difference of opinion. And, the City introduced testimony from residents and the principal of a school along the ordinance route to the effect that truck traffic with its noise, noxious fumes, dust and debris rendered the traditional route dangerous and injurious to the public health and welfare. Thus, following *Skyline*, we conclude that the trial court erred to the extent that its findings substitute its judgment for that of the city council concerning the general wisdom of the regulation.

We turn now to the trial court's findings with respect to the impact of the ordinance upon Rock Company. Since we have determined that the trial court was not obliged to defer to the city council's judgment on that issue, we review the trial court's finding on the basis of the traditional substantial evidence test.

By that test, finding No. 19, to the effect that the quarry site will be valueless if quarry operations are closed down, is not supported by the

---

[2]Respondent observes that the City's expert testimony was based on an admittedly staged videotape which was made during the winter and which, therefore, did not take into account summer recreation traffic.

evidence. On the contrary, the only evidence in the record on that issue suggests that the quarry site could profitably be used for a residential subdivision and has been considered for such a use. We therefore reject that finding.

The trial court's finding No. 18, to the effect that if the ordinances are enforced contractors will go elsewhere and Rock Company will be forced to close, is supported by evidence. The company president testified to that effect, with supporting reasons, and his testimony was supported by one of his customers. While it is true, as the City observes, that this evidence is somewhat speculative in nature it is also true that there was no direct evidence to the contrary. Under the circumstances, we hold that the evidence was sufficient to support that finding, and consequently the corollary finding (No. 16) that upper Lake Chabot Road and Fairmont Drive is not a feasible alternate truck route to and from Rock Company. Given these findings, the conclusion that the ordinance was invalid as applied to Rock Company follows from the *McCammon-Neary-Skyline* trilogy.

Our conclusion supports the trial court's injunction, but only as the ordinance affects this plaintiff. The injunction will be modified to permit enforcement of the ordinance generally. As so modified, the judgment is affirmed.

Miller, J., and Smith, J., concurred.