Filed 2/22/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| CITY OF NORWALK,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CITY OF CERRITOS,<br><br>  Defendant and Respondent. | B327413<br><br>(Los Angeles County Super. Ct. No. 22STCV33737)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on February 1, 2024, be modified as follows:

1. In the second full paragraph on page 19 beginning with "First," add the phrase "(*San Leandro*)" to the fifth sentence, so the citation in that sentence reads as follows:

> (*San Leandro Rock Co. v. City of San Leandro* (1982) 136 Cal.App.3d 25, 34-35 (*San Leandro*) [weight limits on streets that pass into other cities valid];

2. On page 22, after the paragraph ending with "amendment would be futile'"]).)," add the following new paragraph:

> For the very first time in a petition for rehearing, Norwalk argues that it can state a claim for relief under Vehicle Code section 35703. Not only has Norwalk waived this argument by asserting it in a grossly untimely fashion (*EpicentRx, Inc. v. Superior Court* (2023) 95 Cal.App.5th 890, 909, fn. 9 ["'A petition for rehearing is not the place to raise any argument . . . for the first time'"]), the argument lacks merit. As briefly noted above, Vehicle Code section 35703 explicitly limits the authority conferred upon local governments by Vehicle Code section 35701 because it limits any local regulation of commercial vehicles to the regulation of *through traffic* by specifying that no local ordinance may prohibit commercial vehicles "coming from an unrestricted street having ingress and egress by direct route to and from a restricted street when necessary for the purpose of making pickups or deliveries of goods, wares, and merchandise from or to any building or

2

structure located on the restricted street . . . ." (Veh. Code, § 35703.) Norwalk is not entitled to add a claim under Vehicle Code section 35703 because the ordinance does not, as a matter of law, run afoul of that statute; that is because the ordinance does not prohibit the use of restricted routes to conduct pickups and deliveries to locations *within Cerritos*. Norwalk asserts that the ordinance prohibits the use of Bloomfield Avenue to make pickups and deliveries to and from a warehouse located on that street. But that warehouse, by Norwalk's own allegations, is located in the City of *Santa Fe Springs*—not *Cerritos*. As a result, the ordinance does not impermissibly prohibit the use of any regulated route to make pickups and drop offs to any location *within Cerritos*, and hence does not violate Vehicle Code section 35703. To the extent Norwalk is arguing that Vehicle Code section 35703 prohibits ordinances that regulate *through traffic* along a specific route in a city if there is a pickup or delivery location somewhere along that route as that route continues into a different city, that argument rests on a misreading of the Vehicle Code that has already been squarely rejected. (See *San Leandro*, *supra*, 136 Cal.App.3d at pp. 34-35.)

\* \* \*

There is no change in the judgment.

3

Appellant's petition for rehearing is denied.

_____

LUI, P. J.                    CHAVEZ, J.                    HOFFSTADT, J.

Filed 2/1/24 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| CITY OF NORWALK, | B327413 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV33737) |
| v. | |
| CITY OF CERRITOS, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge. Affirmed.

Alvarez-Glasman & Colvin, Stephen T. Owens, Eric G. Salbert and Bruce T. Murray for Plaintiff and Appellant.

Rutan & Tucker, William H. Ihrke and Robert O. Owen for Defendant and Respondent.

* * * * * *

 This is a tale of two cities.  Way back in 1974, the City of Cerritos (Cerritos) enacted an ordinance limiting commercial and heavy truck traffic through the city to certain major arteries. After two amendments to that ordinance in 2019 and 2020 removed one of those arteries, the neighboring City of Norwalk (Norwalk) sued, claiming that the ordinance's restrictions constitute a public nuisance by shunting extra truck traffic through Norwalk, and thereby causing the "adverse effects" that accompany heavier traffic flow.  Because a city is immune from public nuisance liability for any acts "done or maintained under the express authority of a statute" (Civ. Code, § 3482),[1] and because two sections of the Vehicle Code—namely, sections 35701 and 21101—explicitly authorize cities to regulate the use of their streets by commercial or heavy vehicles, this appeal presents the question:  Is Cerritos immune from liability for the public nuisance of diverting traffic into Norwalk?  Yes, because the immunity conferred by Civil Code section 3482 applies not only to the specific act expressly authorized by statute (namely, enacting an ordinance designating routes for commercial vehicles and those exceeding weight limits), but also to the inexorable and inescapable consequences that necessarily flow from that act (namely, that drivers unable to use those routes will take different routes, thereby causing adverse effects of heavier traffic on those other routes).  Where, as here, the authorized act and its consequence are flip sides of the same coin, immunity applies to both, and a public nuisance claim fails as a matter of law.  We accordingly affirm the judgment after demurrer for Cerritos.

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

# FACTS AND PROCEDURAL BACKGROUND

## I. Facts

### A. *The City of Cerritos*

Cerritos is a part of the Los Angeles megalopolis. Cerritos is roughly U-shaped. All around the U are the cities of Bellflower, Lakewood, La Palma, Buena Park, La Mirada, and Santa Fe Springs. Nestled in the middle of the U are the cities of Artesia and Norwalk. State Route 91 (Route 91) runs west and east through most of Cerritos, then veers to the southeast. Interstate 605 (I-605) runs north and south, bisecting the left side of the U. Cerritos has six major west-east arteries and 10 major north-south arteries.

### B. *Cerritos's 1974 ordinance*

In 1974, Cerritos added section 10.18.010 to its municipal code (the ordinance). The ordinance generally prohibits "any commercial vehicle or any vehicle exceeding six thousand pounds" that is traveling *through* Cerritos (as opposed to "making pickups or deliveries" within the city)[2] from driving on "any street, road, or public right-of-way *within the city*" except "streets . . . designated as truck routes." (Cerritos Mun. Code, § 10.18.010, subds. (A) & (D), italics added.)

The ordinance then designates the city's truck routes. As noted above, Cerritos has 16 major arteries, which are the streets most likely to be used by vehicles traveling *through* the city:

---

[2]    The ordinance's restrictions also do not apply to any vehicles "use[d] in the construction, installation or repair of any public utility." (Cerritos Mun. Code, § 10.18.010, subd. (E).)

3

Of the city's six *major west-east arteries*:

● Two arteries—namely, Alondra Boulevard and Del Amo Boulevard—are boundary streets that mark the border between Cerritos and neighboring cities;

● One artery—namely, 166th Street—is not a designated truck route along any of its length within the city;

● Two arteries are designated truck routes for some portion of their length within the city—Artesia Boulevard is a designated truck route from the western edge of the city to Route 91; and 183rd Street is a designated truck route from Route 91 to the nearest north-south artery that is a designated truck route; and

● One artery—namely, South Street—is a designated truck route along its entire length through the city.

Of the city's 10 *major north-south arteries*:

● Two arteries—namely, Palo Verde Avenue and Valley View Avenue—are boundary streets that mark the border between Cerritos and neighboring cities;

● One artery—namely, Gridley Road—is a street that is a boundary street for only a portion of its length, but is not a designated truck route;

● Two arteries—namely, Shoemaker Avenue and Marquardt Avenue—are not designed truck routes for any of their length within the city;

● Four arteries are designated truck routes for some portion of their length within the city—Studebaker Road is a designated truck route from the northern boundary of the city to South Street, which connects with the I-605; Norwalk Boulevard is a designated truck route from Route 91 to the nearest west-east artery that is a designated truck route; Bloomfield Avenue is

4

a designated truck route from the northern boundary of the city to Artesia Boulevard, which is a west-east artery and designated truck route connecting with Route 91; and Carmenita Road is a designated truck route from 183rd Street to South Street, which is a west-east artery and designated truck route; and

- One artery—namely, Pioneer Boulevard—is a designated truck route along its entire length through the city.

### C. *Cerritos's 2019 and 2020 amendments*

In December 2019 and February 2020, Cerritos enacted two amendments to the ordinance, the net effect of which was to eliminate Bloomfield Avenue as a designated truck route.

## II. Procedural Background

### A. *Norwalk sues*

On October 18, 2022, nearly 48 years after Cerritos adopted its ordinance and nearly three years after its most recent amendments, Norwalk sued Cerritos for a single claim of public nuisance. Specifically, Norwalk alleged that the net effect of Cerritos's ordinance was to "divert commercial and freight traffic away from Cerritos, while channeling it through Norwalk, resulting in a very substantial increase in heavy truck traffic through the streets of Norwalk, including residential streets, with severe adverse effects on Norwalk residents, businesses and property."

### B. *Cerritos's demurrer is sustained*

On November 21, 2022, Cerritos filed a demurrer arguing, as pertinent here, that because it adopted the ordinance "under the express authority of a statute"—namely, Vehicle Code section 35701—Cerritos is statutorily immune pursuant to Civil Code section 3482. After further briefing and a hearing, the trial court issued an order sustaining the demurrer without leave to amend.

5

The court reasoned that Cerritos enacted the ordinance under the authority granted to it by Vehicle Code sections 35701 and 21101, and that this statutory authorization immunized Cerritos from liability by virtue of Civil Code section 3482.

## C. *Appeal*

Norwalk filed a premature notice of appeal after entry of the minute order, but that notice became effective once the trial court entered a judgment in May 2023. (*Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 991-992; *Davaloo v. State Farm Ins. Co.* (2005) 135 Cal.App.4th 409, 413, fn. 7; Cal. Rules of Court, rule 8.104(d).)

## DISCUSSION

Norwalk argues that the trial court erred in sustaining Cerritos's demurer without leave to amend.

In assessing whether the trial court erred in this ruling, we ask two questions: "(1) Was the demurrer properly sustained; and (2) Was leave to amend property denied?" (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134.) In answering the first question, "we ask whether the operative complaint '"states facts sufficient to constitute a cause of action."'" (*California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 929; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; Code Civ. Proc., § 430.10, subd. (e).) In undertaking that inquiry, "we accept as true all '"'material facts properly pleaded'"'" in the operative complaint (*Tax & Fee Administration*, at p. 929) as well as facts subject to judicial notice, giving '"'precedence'"' to the judicially noticed facts if they '"'contradict the allegations'"' (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 236, fn. 10; *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751-752; *Brakke v.*

6

*Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 767). In answering the second question, we ask "'"whether "'"there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment.''"""" (*Shaeffer*, at p. 1134.) We review the trial court's ruling regarding the first question de novo (*Engel v. Pech* (2023) 95 Cal.App.5th 1227, 1235), and review its ruling regarding the second for an abuse of discretion (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242).

## I. Was Norwalk's Public Nuisance Claim Properly Dismissed?

A "nuisance" is defined as "[a]nything which is injurious to health . . . or is indecent or offensive to the senses, . . . so as to interfere with the comfortable enjoyment of life or property." (§ 3479.) A nuisance is a "public nuisance" if it "affects at the same time an entire community or neighborhood." (§ 3480; *Friends of H Street v. City of Sacramento* (1993) 20 Cal.App.4th 152, 160 (*Friends of H Street*).) Because "'"each individual in a community must put up with a certain amount of annoyance, inconvenience and interference . . . ,"'" a public nuisance is actionable only if the requisite interference is "both substantial and unreasonable." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1103, 1105, italics omitted; *Hacala v. Bird Rides, Inc.* (2023) 90 Cal.App.5th 292, 324.) Because "[a]nything which unlawfully obstructs the free passage or use in the customary manner of a public street is a nuisance" and because "a municipality may be held liable for creating or maintaining a nuisance even though a governmental activity is involved" (*Phillips v. Pasadena* (1945) 27 Cal.2d 104,

7

106), Norwalk's allegations sufficiently allege that Cerritos's ordinance constitutes a nuisance.

However, section 3482 confers a statutory immunity that is a complete defense to a nuisance claim. (§ 3482.) Because a demurrer may be sustained on the basis of statutory immunity (e.g., *Leyva v. Nielsen* (2000) 83 Cal.App.4th 1061, 1065-1066), the viability of Norwalk's claim turns on the following question: Does section 3482 apply? We review this question de novo, as it turns on issues of statutory construction and the application of the law to undisputed facts. (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 652 [interpreting immunity statute de novo]; *Guardianship of Saul H.* (2022) 13 Cal.5th 827, 846-847 [application of law to undisputed facts reviewed de novo].)

### A. *The statutory immunity conferred by section 3482*

Section 3482 provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance." (§ 3482.) Although its plain language refers to *statutory* authority, the immunity conferred by section 3482 also applies to acts authorized by regulations and "other express government approvals" (such as permits). (*Williams v. Moulton Niguel Water Dist.* (2018) 22 Cal.App.5th 1198, 1205 (*Williams*).) To ensure that section 3482-based immunity goes no further than the Legislature ""contemplated,"" courts construe that immunity "narrow[ly]." (*Greater Westchester Homeowners Assn. v. City of Los Angeles* (1979) 26 Cal.3d 86, 100-101 (*Greater Westchester*); *Today's IV, Inc. v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1177 (*Today's IV*).) Consequently, immunity from public nuisance liability under section 3482 applies only if "'the acts complained

8

of [as a nuisance] are authorized'" either (1) "'by the express terms of the statute under which the justification is made,'" or (2) "'by the plainest and most necessary implication from the powers expressly conferred.'" (*Hassell v. San Francisco* (1938) 11 Cal.2d 168, 171 (*Hassell*); *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 291 (*Varjabedian*); *Greater Westchester*, at p. 101.) Applying this standard requires a "particularized assessment of each authorizing statute in relation to the act which constitutes the nuisance." (*Varjabedian*, at p. 291, fn. 6; *Greater Westchester*, at p. 102.)

Although courts can readily assess whether the alleged nuisance in a particular case is "'authorized by the express terms of [a] statute [authorizing conduct]'" by looking to the plain language of the statute, assessing whether an alleged nuisance is a "'necessary implication'" of the statute's express authorization has proven more challenging. (*Hassell*, *supra*, 11 Cal.2d at p. 171.) Thus far, the courts have developed two rules of thumb to address this challenge.

One line of cases draws a distinction between the "activity authorized" and "the *manner* in which the activity is performed"; under this line of cases, section 3482's immunity applies to the former, but may not apply to the latter. (*Venuto v. Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 129; *Greater Westchester*, *supra*, 26 Cal.3d at p. 101; *Today's IV*, *supra*, 83 Cal.App.5th at p. 1189; *Jones v. Union Pacific Railroad Co.* (2000) 79 Cal.App.4th 1053, 1067 (*Jones*); *Friends of H Street*, *supra*, 20 Cal.App.4th at p. 160; *Chase v. Wizmann* (2021) 71 Cal.App.5th 244, 259-260.)

A second line of cases draws a distinction between "the act" authorized by the statute, and "the consequences of [that] act";

9

under this line of cases, section 3482's immunity applies to the former, but may not apply to the latter. (*Williams*, *supra*, 22 Cal.App.5th at p. 1207 [discussing cases].)

These rules of thumb, while drawing distinctions that are easy to remember ("act versus manner" and "act versus consequence"), nevertheless fall short of accurately assessing whether an alleged nuisance falls within the ambit of section 3482. There are times when there is only one manner to undertake an act; in that instance, the act and the manner are one in the same, section 3482's immunity applies to both, and drawing any distinction between the two is an artificial and potentially misleading construct. (E.g., *Orpheum Building Co. v. San Francisco Bay Area Rapid Transit Dist.* (1978) 80 Cal.App.3d 863, 875-876 (*Orpheum*) [where defendant had no choice in how to undertake construction, immunity applied to construction as well as to manner of construction].) And there are times when a consequence is the inevitable result of the act; in that instance, the act and its consequence are also one in the same, section 3482's immunity applies to both, and drawing any distinction between the two is an artificial and potentially misleading construct. (E.g., *Farmers Ins. Exchange v. State of California* (1985) 175 Cal.App.3d 494, 503 (*Farmers*) [where defendant was authorized to spray pesticide in a particular area, immunity applied to the consequential damage caused to paint on cars within that area].)

In our view, courts assessing whether an alleged nuisance is a "necessary implication" of a statute's express authorization should ask the following question: Is the alleged nuisance an inexorable and inescapable consequence that necessarily flows from the statutorily authorized act, such that the statutorily

10

authorized act and the alleged nuisance are flip sides of the same coin?

The precedent applying section 3482 becomes a coherent whole when we apply this formulation.

Where an alleged nuisance does not inexorably and inescapably flow from the statutorily authorized act—typically because the alleged tortfeasor has some leeway in *how* to undertake the authorized act—then section 3482's immunity does not apply. In *Varjabedian*, *supra*, 20 Cal.3d at p. 292, a defendant was not immune from public nuisance liability for the noxious odors emitting from its statutorily authorized operation of a sewage treatment plant because it is possible to operate a plant *without* such odors. In *Greater Westchester*, *supra*, 26 Cal.3d at pp. 100-102, a defendant was not immune from public nuisance liability for noise pollution emitting from its statutorily authorized operation of an airport because it is possible to operate an airport with noise abatement measures in place. In *Wilson v. Southern California Edison Co.* (2015) 234 Cal.App.4th 123, 129, 157-159, a defendant was not immune from public nuisance liability for allowing "uncontrolled stray electrical currents" to enter others' property, despite its statutorily authorized construction of an electrical substation, because stray currents were not an unavoidable "byproduct" of the authorized construction. In *Otay Land Co., LLC v. U.E. Limited, L.P.* (2017) 15 Cal.App.5th 806, 817-818, 846-847, a defendant was not immune from public nuisance liability for environmental contamination, despite its statutorily authorized operation of a gun shooting range, because it is possible to operate a range without leaving toxic bullet casings in the ground. In *Jones*, *supra*, 79 Cal.App.4th at p. 1067, a defendant was not immune

11

from public nuisance liability for blowing train horns and whistles as well as idling trains for days in front of homes, despite its statutorily authorized operation of a train line, because the horns, whistles and idling were unnecessary to that operation. In *Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.* (2010) 190 Cal.App.4th 1502, 1531-1532, a defendant was not immune from public nuisance liability for harm caused by pesticides sprayed on neighboring properties, despite its statutorily authorized use of pesticides on its own property, because it is possible not to overspray onto others' property.

Conversely, where an alleged nuisance inexorably and inescapably flows from the statutorily authorized act, then section 3482 immunity *does* apply. Thus, in *Williams*, supra, 22 Cal.App.5th at pp. 1206-1207, a defendant was immune from public nuisance liability for damage to copper piping caused by chloramines in the water when it had statutory authorization to insert chloramines into the water supply. In *Farmers*, *supra*, 175 Cal.App.3d at p. 503, a defendant was immune from public nuisance liability for damage to the paint on cars caused by a pesticide when it had statutory authorization to spray that pesticide in the area where the car was located.[3] In *Pekarek v. City of San Diego* (1994) 30 Cal.App.4th 909, 917-918, a defendant was immune from public nuisance liability for allowing ice cream trucks to be operated on public streets under certain

[3] *Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1258-1259, mentions section 3482 immunity, but ultimately finds no public nuisance liability for operating a wastewater treatment plant due to a lack of causal link between the discharge of effluents and the alleged public nuisance of excessive overgrowth of plants in the waterways into which the effluent was discharged.

12

conditions when it had authority to allow their operation. And, most pertinent here, in *Today's IV*, *supra*, 83 Cal.App.5th at pp. 1182-1183, in *Orpheum*, *supra*, 80 Cal.App.3d at pp. 875-876, and in *Harding v. State of California ex rel. Dept. of Transportation* (1984) 159 Cal.App.3d 359, 362-363 (*Harding*), the defendants were immune from public nuisance liability for the noise, dust, fumes, and access limitation caused by the construction of transit stations (*Today's IV* and *Orpheum*) and a highway (*Harding*) when they had statutory authorization to undertake that construction.

B.     *Section 3482 immunity applies to the public nuisance alleged in this case*

Under the analytical framework set forth above, our task is to assess whether the public nuisance alleged in this case—namely, the "adverse effects" attendant to the "heavy truck traffic" diverted into Norwalk by virtue of the ordinance—inexorably and inescapably flows from any statutorily authorized act.

At the threshold, Cerritos asks us to narrow the focus of our inquiry to only that portion of the public nuisance caused by the 2019 and 2020 amendments rather than to the ordinance as a whole. We decline to do so. Although Norwalk has proffered no reason for sitting on its proverbial hands for nearly half a century while the bulk of the ordinance has been in full effect, public nuisance liability has no statute of limitations because such nuisances are a continuing wrong. (§ 3490; *Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1142 ["Section 3490 has been construed to mean that the statute of limitations is no defense to an action brought by a public entity to abate a public nuisance"], superseded on other grounds by Bus. & Prof. Code, §

13

17200; *Zack's, Inc. v. City of Sausalito* (2008) 165 Cal.App.4th 1163, 1191 (*Zack's*) [same].)  As a consequence, we must evaluate the nuisance occasioned by the ordinance as a whole.

Although the state has, as a general rule, "preempted the field of motor vehicle traffic regulation" (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1177; *Rumford v. City of Berkeley* (1982) 31 Cal.3d 545, 550 (*Rumford*); see Veh. Code, § 21), the state has nevertheless delegated to local governments (such as cities and counties) the authority "to regulate traffic within their jurisdictions by specified means" (*Friends of H Street*, *supra*, 20 Cal.App.4th at p. 161; *Rumford*, at p. 550).  Two of those delegating statutes are at issue here.  First, Vehicle Code section 35701, in pertinent part, authorizes "[a]ny city . . . by ordinance . . . [to] prohibit the use of a street by any commercial vehicle or by any vehicle exceeding a maximum gross weight limit . . ." as long as that street is within the city's "exclusive jurisdiction" (Veh. Code, § 35701, subd. (a);[4] cf. Veh. Code, § 35702), although any such ordinance must exempt vehicles "making pickups or deliveries" within the city (*id.*, § 35703) as well as vehicles being used "in the construction, installation, or repair of any public utility" (*id.*, § 35704). (Accord, *Ratkovich v. City of San Bruno* (1966) 245 Cal.App.2d

---

[4]     The predecessor statute to Vehicle Code section 35701 was Vehicle Code section 713, which premised the imposition of weight limits on the city's designation of an alternate permissible route through the city.  (E.g., *McCammon v. City of Redwood City* (1957) 149 Cal.App.2d 421, 422-425; *Skyline Materials, Inc. v. City of Belmont* (1961) 198 Cal.App.2d 449, 454-455 (*Skyline*).) When our Legislature replaced Vehicle Code section 713 with Vehicle Code section 35701, it did not carry forward the "alternate route" requirement.

870, 877 (*Ratkovich*) [noting that this "grant to cities of authority to legislate in this field is . . . clear"]; *City of Redwood City v. Dalton Constr. Co.* (1990) 221 Cal.App.3d 1570, 1572 ["A city may generally *prohibit* use of a street by a vehicle exceeding a maximum gross weight limit"].)  Second, Vehicle Code section 21101, subdivision (c), in pertinent part, authorizes "[l]ocal authorities" to "adopt rules and regulations by ordinance" that "[p]rohibit[] the use of particular highways by certain vehicles" "for those highways under their jurisdiction."  (Veh. Code, §§ 21101, subd. (c), 360 ["highway" defined to include street].)

Vehicle Code sections 35701 and 21101, subdivision (c), expressly authorized Cerritos to enact its ordinance limiting through-traffic by commercial vehicles and vehicles exceeding a certain weight to designated arteries within the city:  Vehicle Code section 35701 does so explicitly, and Vehicle Code section 21101, subdivision (c), does so by implication because the ordinance "[p]rohibit[s] the use of particular highways by certain vehicles"—namely, commercial vehicles and those exceeding a specified weight.

But the alleged public nuisance is not the enactment of the ordinance, but rather the diversion of "heavy truck traffic"—and the attendant "severe adverse effects" of that heavier traffic (e.g., noise, dust, congested roads)—into Norwalk *occasioned by* the ordinance.  As explained above, Civil Code section 3482's immunity applies to that nuisance only if the diversion of traffic and its attendant, deleterious effects inexorably and inescapably flow from the enactment of the ordinance expressly authorized by the two Vehicle Code provisions.  So we ask:  Are the deleterious effects of heavier traffic in Norwalk the flip side of the same coin as the enactment of the ordinance in Cerritos?

15

We hold that they are. The closure of one artery to through traffic necessarily diverts that traffic to a different artery. When one channel of a river is blocked, the water necessarily finds a different channel. Life finds a way; so does traffic. What is more, the deleterious effects that Norwalk alleges as a further aspect of the public nuisance are the "unavoidable byproducts" of that diverted traffic. (*Today's IV*, *supra*, 83 Cal.App.5th at p. 1182 [so holding, as to additional "noise, dust, and access limitation" attendant to heavier traffic]; *Lombardy v. Peter Kiewit Sons' Co.* (1968) 266 Cal.App.2d 599, 605 [same], overruled on other grounds by *Southern California Edison Co. v. Bourgerie* (1973) 9 Cal.3d 169.) Norwalk's chief rejoinder is that "the act constituting the nuisance is the purposeful shifting of heavy vehicle traffic to Norwalk, which is not expressly authorized by statute," but this ignores that section 3482's immunity reaches beyond the act specifically authorized to the consequences inexorably flowing from that act.

## C. *Norwalk's further arguments*

Norwalk makes what boils down to two further arguments. Although Norwalk in its briefs characterizes these arguments as justifying granting leave to amend, its arguments are part and parcel of its already alleged public nuisance claim. As a result, the arguments are more properly characterized as challenging the dismissal of that claim rather than a basis for amending the complaint.

### 1. *Failure to engage in a reasonableness analysis*

Norwalk makes a three-step argument: (1) section 3482's immunity applies only if Cerritos's ordinance was *reasonable*; (2) Cerritos's ordinance was unreasonable because it "effectively prohibit[ed] 'any commercial vehicle or any vehicle exceeding six

16

thousand pounds' from traveling through Cerritos on its local streets"; and (3) a total ban of commercial vehicles in a city is per se unreasonable under *Neary v. Town of Los Altos Hills* (1959) 172 Cal.App.2d 721, 726-727 (*Neary*).

We reject this argument.

Norwalk is wrong in suggesting that a reasonableness analysis is part and parcel of the inquiry into immunity from public nuisance liability under section 3482. To be sure, where the state delegates to local governments some of its otherwise plenary authority to regulate, that delegation will be "strictly construed" (*Rumford, supra*, 31 Cal.3d at p. 550) and an exercise of that authority by a local government can be invalidated if that exercise is "so unreasonable as to make it void" (*Neary, supra*, 172 Cal.App.2d at p. 726; *Ratkovich, supra*, 245 Cal.App.2d at p. 884 ["the Legislature cannot empower a municipality to enact arbitrary or unreasonable ordinances"]; accord, *Orpheum, supra*, 83 Cal.App.3rd at p. 876 [section 3482 immunity applied where manner of construction was "unreasonable"]). But as long as the local government's conduct is not "so unreasonable" as to invalidate the state's delegation of regulatory authority, further inquiry into the reasonableness of that local government conduct is off limits to judicial review and is instead entrusted to the policy preferences of the local legislative branch. (*Skyline, supra*, 198 Cal.App.2d at p. 454 ["'The wisdom of the prohibitions and restrictions [of traffic] is a matter for legislative determination, and even though a court may not agree with that determination, it will not substitute its judgment for that of the zoning authorities if there is any reasonable justification for their action'"]; *Friends of H Street, supra*, 20 Cal.App.4th at p. 165 ["under the separation of powers doctrine, courts lack power to

17

interfere with legislative action at either the state or local level"].)[5]

We conclude that Cerritos's ordinance is not "so unreasonable as to" make void the delegation of regulatory authority to the city by virtue of Vehicle Code sections 35701 and 21101, subdivision (c).  Judicially noticed documents flatly contradict Norwalk's allegation that the ordinance "effectively prohibit[s]" *all* traffic by heavy trucks through Cerritos, so the ordinance is unlike the ordinance struck down as unreasonable in *Neary*.  To the contrary, the ordinance allows for unrestricted truck traffic on (1) the full length of three of the six west-east arteries and three of the 10 north-south arteries; and (2) some portion of two other west-east arteries and three other north-south arteries, typically to enable travel between a freeway (such as Route 91 or the I-605) and an intersecting artery; the ordinance prohibits use of the entire length of an artery for only five of its 16 major arteries.  Given that the arteries are the only streets likely to be used by trucks traveling *through* the city, the ordinance does not prohibit such a volume of commercial and heavy truck traffic as to render it "so unreasonable as to [be]

_____

[5]    A handful of cases have upheld section 3482 immunity after commenting that the local government's conduct was "reasonable."  (*Orpheum*, *supra*, 80 Cal.App.3rd at p. 876; *Harding*, *supra*, 159 Cal.App.3d at pp. 362-363.)  However, these cases make no effort to explain whether they are assessing the validity of delegated authority or instead offering a gratuitous observation of reasonableness; neither purports to authorize a free-ranging inquiry into reasonableness despite the separation of powers, and we will not imply such an endorsement from their silence.

18

void."  Further inquiry into the reasonableness of the ordinance is therefore prohibited.

Norwalk resists this conclusion with two further arguments.

First, Norwalk argues that the ordinance is unreasonable because many of the arteries it regulates are streets that continue into adjacent cities, such that the ordinance is unreasonably interfering with regional traffic.  To be sure, the "regulation of traffic" that continues into other cities undoubtedly has a regional impact.  (*Zack's*, *supra*, 165 Cal.App.4th at p. 1183 [noting that public streets are not solely ""'a municipal affair'""]; *City of Hawaiian Gardens v. City of Long Beach* (1998) 61 Cal.App.4th 1100, 1109 (*Hawaiian Gardens*) [noting "the importance of a regional approach to traffic problems"].)  But it is well settled that cities can nevertheless regulate the portion of such streets existing within their city limits.  (*San Leandro Rock Co. v. City of San Leandro* (1982) 136 Cal.App.3d 25, 34-35 [weight limits on streets that pass into other cities valid]; *Pacific Ready-Mix, Inc. v. City of Palo Alto* (1968) 263 Cal.App.2d 357, 360-361 (*Pacific Ready-Mix*) [streets "wholly within [a] city" may be regulated, even if those streets cross into other cities].)  As long as those regulations are not so unreasonable as to render the delegation of authority void (*San Leandro*, at pp. 34-35), their regional impact alone will not invalidate them.

Second, Norwalk argues that the ordinance is unreasonable because several cases have required an inquiry into the policy wisdom of traffic regulations and their impact on neighboring cities under what is now *subdivision (g)* of Vehicle Code section 21101, which allows cities to enact ordinances "[p]rohibiting entry to, or exit from, or both, from any street" (Veh. Code, §

19

21101, subd. (g); *Hawaiian Gardens*, *supra*, 61 Cal.App.4th at pp. 1109-1111; *City of Poway v. City of San Diego* (1991) 229 Cal.App.3d 847, 857-867; *Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 624-628 [treating a three-year "temporary" closure as a permanent closure under subdivision (e)]), and because, in Norwalk's view, there is "no rational basis" not to apply the same analysis to *subdivision (c)* of Vehicle Code section 21101.  This argument ignores a fundamental tenet of statutory construction—namely, that our Legislature's decision to use different language in different parts of the same statute evinces an intent to adopt a different rule. (*Turner v. Victoria* (2023) 15 Cal.5th 99, 115; *Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671, 701.)  Thus, although Norwalk is correct that cases involving street blockages under what is now Vehicle Code section 21101, subdivision (g), have engaged in a more probing inquiry into reasonableness, those cases have at the same time expressly acknowledged that lesser forms of regulation authorized by Vehicle Code section 21101— including the restricting of certain vehicles on certain streets under subdivision (c)—do *not* warrant such an inquiry into reasonableness.  (*Poway*, at p. 867.)  We decline Norwalk's invitation to ignore persuasive precedent directly on point or basic canons of statutory construction.

>    2.    *Failure to obtain state's permission*

Norwalk makes a second, three-step argument:  (1) Vehicle Code section 35702 requires a city seeking to regulate any street "not under [its] exclusive jurisdiction" to obtain written approval from the California Department of Transportation (CalTrans), (2) the ordinance does not expressly exclude from its reach several highways and streets over which Cerritos does not have exclusive

20

jurisdiction—namely, I-605, Route 91, and five of the arteries that mark the border between Cerritos and other cities, such that (3) the ordinance is invalid as to those routes because Cerritos never obtained CalTrans approval for those routes.

This argument fails because its second step is wrong. Route 91 and I-605 are state and federal highways, respectively, and are *never* within a city's power to regulate under Vehicle Code sections 35701 and 21101 (Sts. & Hy. Code, §§ 231, 391; 23 U.S.C. § 103(c)); Cerritos's failure to expressly disclaim jurisdiction over thoroughfares over which it has no jurisdiction is irrelevant (and does not create a factual dispute). Border streets are also outside a city's power to regulate (*Skyline*, *supra*, 198 Cal.App.2d at p. 458), but Cerritos did not purport to regulate those streets. The ordinance refers to "any street, road, or public right-of-way *within the city*" (italics added), and case law has drawn a distinction between streets "within" a city and streets constituting its border(s). (*Pacific Ready-Mix*, *supra*, 263 Cal.App.2d at pp. 360-361 [distinguishing streets "wholly within [a] city" from "a boundary street"]; *Skyline*, at p. 458 [same].) We may presume that Cerritos was aware of this precedent. (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1135 ["We presume the Legislature was aware of existing judicial decisions directly bearing on the legislation it enacted"]; *KB Salt Lake III, LLC v. Fitness International, LLC* (2023) 95 Cal.App.5th 1032, 1048 ["interpret[ing] ordinances . . . the same way [as] statutes"].) Even if the ordinance is ambiguous on this point, we may construe that ambiguity in a manner that renders the ordinance valid (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 118-119 [construing "ordinance" to "comport[] with its validity"]; *Kraus v. Trinity Management*

*Services, Inc.* (2000) 23 Cal.4th 116, 129 [same, as to statutes])—and we choose to do so here.  Although the ordinance specifically designated one border street as a designated truck route (namely, Valley View Avenue), its superfluous act of doing so does not—by negative inference—somehow indicate an intent to regulate all other border streets as well as state and federal highways, thereby risking partial invalidity of the ordinance.

## II.   Was Leave to Amend Properly Denied?

Norwalk's sole remaining argument seeking leave to amend is that it can add a writ of mandamus cause of action to compel Cerritos to obtain permission from CalTrans under Vehicle Code section 35702 to regulate the state highways and border arteries. Because we have rejected the merits of this argument, amending to add a cause of action to support those merits would be futile. (*Sandler v. Sanchez* (2012) 206 Cal.App.4th 1431, 1437 ["'[L]eave to amend should *not* be granted where . . . amendment would be futile'"].)

**DISPOSITION**

The judgment is affirmed.  Cerritos is entitled to its costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>**.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

 LUI


_____, J.

 CHAVEZ


23